Davis, J.,
delivered the opinion of the court:
In the spring of 1877 the claimant contracted to transport the mails between the United States post-office in New York City and various railroad stations and steamboat landings, and also to transfer certain through mails from one railroad station to another. The route covered by this agreement was known as No. 6635. The contract ran for four years from July 1, 1877, and the service was designated “ mail-messenger service in the city of New York.” Among other things the claimant agreed in this contract to carry the mails from the city post-office “ to the Pennsylvania Railroad depot (foot of Cortlandt street) and back fifty times per week; ”• and that for any new or additional service in “ said city” which he might be ordered to perform he should not receive additional compensation. Another clause in the contract also prohibits the allowance of additional compensation for additional service, but omits the limiting words " in said city.” It is upon the interpretation of these two apparently inconsistent clauses that this branch of the case turns, for the claimant alleges that after entering upon the performance of the contract he was ordered to extend some of his Oort-landt-street trips to Jersey City; this service he contends was extra; and as it was not performed in the city of New York, he believes himself entitled to compensation therefor. ■
spring of 1877 to carry the mails between the city post-office and various sub-post- *324 offices or post-office stations in New York. The route is known •as No. 6636, and the caption of the contract shows it to be for “ mail-station service in the city of New York.” The term was the same as that of the messenger contract, to wit, four years from July 1, 1877.
While the claimant was performing this contract he was ordered to transport the mail eighteen round trips per week between Station E and the Hudson River Railroad depot, and also to make six trips each week from the city post-office to the Harlem Railroad depot. Neither of these services was named, in the station contract, but that instrument provided that any increase in mail-station service should be paid for pro rata, and the claimant, holding these trips to be extra, service under this contract, asks compensation therefor, to which, it is not disputed, he is entitled if the service was rendered under the station contract, and not, as the government contends, under the messenger contract.
The claimant puts in evidence certificates of the postmaster in New York City, which are annexed to the accounts for the extra trips, presented after they had been performed. These certificates state that the service as shown in the accounts was necessary, and duly performed under orders issued from the post-office, and are objected to by the defendants so far as they may be used to prove under which contract the service was performed, or that orders had been theretofore issued from the post-office directing the claimant to perform it.
As to the eighteen trips from Station E, the certificate, if admitted, would be merely cumulative, for the trips were in fact made, and on its face the service is station and not messenger service; the mails were collected at a post-office station, and the fact that they were delivered at a railroad depot and not at another post-office station, or at the city post-office, is not of consequence, as we find in this contract provision for the transfer of mails to and from stations of the Elevated Railroad; and, further, the general purpose of the messenger contract is not directed to such purely local service as this.
The trips between the city post-office and the Harlem Railroad stand upon a very different foundation. Upon their face they clearly fall within the messenger contract, connecting, as they do, the central office with a railroad depot, and nothing except the postmaster’s certificate appears in the record tending *325 to show (even if that be of consequence) that the mails carried were in fact intended for a substation. It is conceded by the defendants that this certificate is competent to prove the necessity and due performance of the service, but that it cannot go further. This point, is well taken. To admit the document as proof of the particular contract under which the work was done would involve an acceptance of the postmaster’s conclusion of law, based upon his interpretation of the two contracts in the light of facts not before the court, and which is contrary to the evidence here produced.
Returning now to the claim for increase of trips between Cortlandt street and Jersey City, the claimant urges that this service, not being within the geographical limits of New York City, does not fall within clauses prohibiting extra compensation for new or additional service, and, further, thatthe service was not new or additional within the true meaning of the agreement. Both these propositions the counsel for the government deny, contending that as the claimant, in addition to the Cortlandt-street trips, agreed specifically to carry mails to Jersey City fifty-four times each week, the extra trips to that point fall within the prohibitory clauses. To sustain this contention, which has been fully and ably presented, it must be shown that the second clause, broadly prohibiting extra compensation for new or additional service, limits the first clause,, which confines the prohibition to additional service within the city limits. The main object of the contract was to secure the-safe and speedy transfer of mails between the city post-office and the railroad and steamboat lines. It was intended to provide a connection between the principal city office and the railroad and steamboat system, and between different links of this system. Such being the purpose of the instrument, and the Pennsylvania Company having its terminus in New York, it. would naturally be inferred that a delivery of mails intended for that company at its. Cortlandt-street depot would be sufficient, and any exceptions to this course would be distinctly set forth and limited to those specifically named. That is, that a contract for the transfer of mails in a city would not call for their delivery in another city, over a portion of the line of the very company into whose custody they were ultimately to be given, unless specific agreement were made to that effect. Among the routes specified as let to the claimant were several *326 requiring* delivery in cities outside of New York, as tbe fifty-four trips to Jersey City already mentioned and others to Ho-boken and to Long Island City. The trips were named in the •contract, their number and length were set forth in the advertisement in detail, and if we stop here the claimant can beheld only to the performance of the exact service specified.
Thereappears, however, in the agreement this clause: “And [the contractor] will do and perform any other mail-messenger and transfer service now being performed in the said city of New York, and any and all new or additional mail-messenger or transfer service in the said city, whether to and between depots and landings now established and those which may hereafter be established, which may become necessary and be required by the Postmaster-General during the time of this contract, without additional compensation.”
This distinctly confines the extra service to the city limits ; but further on appears the provision “that the Postmaster-General may, if it be required by the public interest, order new or additional service which may become necessary to be performed, which shall be performed without additional compensation.”
As we have seen, the contract, the proposal, and the advertisement aimed generally at mail transfer within the city limits; further, it appears that the Pennsylvania Railroad, at the date of the contract, was carrying mails across its ferry from Oort-landt street to Jersey Oity; it is therefore fair to assume that in the minds of the parties the Jersey City trips named in the contract were regarded as exceptional, and not subject to the same rules as to extra compensation for additional trips as the transfer service within the city limits. It is a natural inference that if the government desired this contractor, under a city-transfer contract, to take mails to another city, over the lines of another contractor, for delivery there to this other contractor, specific provision therefor would have been made.
The “ new ” service contemplated was service similar in its nature to that embraced in the general intent of the contract, such as that becoming necessary through the establishment of a new railroad station or steamboat landing in New York, while “ additional” service was to be an increase of the service which the contract as a whole contemplated, not an increase of an exceptional service which more properly might form part of an *327 •other instrument. Certainly the term “ new or additional service” was not intended to cover the transfer from one contractor to another of au existing service previously performed by the one for pay, and which, under the defendants’ interpretation, the other must render gratuitously. This would be a change of service, not service new or additional to that prescribed in the agreement.
In the construction of this contract the government can claim no other or more favorable rule than a private individual, and as it is well known that instruments of this character are prepared by the Post-Office Department, leaving to the contractor no choice as to form or phraseology, that construction must be adopted which is more to the advantage of the claimant. Authority for this is found in Noonan v. Bradley (9 Wallace, 407), where the court said: “ If there were any doubt as to the construction which should be given to the agreement of the intes-' tate, that construction should be adopted which would be more to the advantage of the defendant, upon the general ground that a party who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him, and on the further ground that when an instrument is susceptible of two constructions — the one working injustice and the other consistent with the right of the case — that one should be favored which standeth with the right.”
In construing the conflicting clauses of this agreement we ■have followed the rule laid down in Gibbons v. The United States (15 C. Cls. R., 174), where the court, speaking by Judge Nott, said: “ When it becomes the duty of a court to ascertain the true construction which should be given to a disputed article of a contract, there are three things which ordinarily should be the subject of consideration: 1st, the circumstances known to both parties which preceded and attended the making of the contract, in the light of which it should be interpreted; 2d, the general purpose of the contract and those specific provisions which directly or indirectly bear upon and affect the provision .which is the subject of controversy; 3d, the language and effect of the clause or article to which a construction must be applied.”
The circumstances surrounding the contract point generally to transfer within the city. The purpose of the parties was to *328 connect the great transportation lines with each other and with the city post-office, and one of these lines was the Pennsylvania Bailroad, with its terminus in New York. The contingency contemplated by the contractor under which new or additional service could be required was the establishment within the city of new railroad depots or an increase in bulk of mails carried on the city routes. It could not have been assumed by the contfactor or his sureties that under the guise of new or additional service transportation previously performed by the railroad company for pay was to be performed by him without pay over that company’s line. The question of the amount of compensation is disputed, the government contending for a pro rata allowance based upon the total consideration named in the contract, while the claimant asks a quantum meruit and the amount actually disbursed for ferri-age. As we find that in either aspect of the case the allowance would be the same in amount, it is not necessary to consider this question.
Judgment will be entered in favor of the claimant in the sum of $16,445.36.