# UNITED STATES *v.* OTIS.

# OTIS *v.* UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Submitted December 20, 1886. — Decided January 24, 1887.

Contracts between the United States and a mail contractor, one for mail station service, and the other for mail messenger service, construed, in reference to payment for extra service.

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Howard* for the United States.

*Mr. J. Coleman* for Otis.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

These are appeals by both parties from a judgment rendered by the Court of Claims in favor of George K. Otis against the United States for $16,445.36. The claims of Otis are founded on two contracts for carrying the mails, on two routes, No. 6636 and No. 6635. The findings of fact by the Court of Claims, contained in the record, are set forth at length in the report of the case in 20 C. Cl. 315. Such of them as are material are as follows:

As to No. 6636. Finding No. 1. The United States advertised, March 1, 1877, by an advertisement headed "*Mail Station Service, New York City,*" for proposals "for carrying the mails of the United States from July 1, 1877, to June 30, 1881, in the city of New York, as herein specified. Route No. 6636." The findings state that the advertisement designated the points to and from which the mails should be carried, but those points are not set forth in the findings. The advertisement then proceeded: "It is to be understood and agreed that any increase in the service which may be

rendered necessary by the removal to other localities of any of the above named stations, or by any other cause, may be ordered by the Postmaster General, and shall be paid for *pro rata;* and, also, that compensation, *pro rata,* shall be deducted in case of decrease in said service, caused by any such removal or by the discontinuance of any of said stations."

Under this advertisement Otis made a written proposal "to carry the mails of the United States from July 1, 1877, to June 30, 1881, on Route No. 6636, between New York City post-office and branch offices, state of New York, under the advertisement of the Postmaster General dated March 1, 1877," for the sum of $14,900 per annum. On the 13th of April, 1877, a written contract was executed by the United States and Otis, which recited that the proposal of Otis, under said advertisement, "for the performance of the mail station service at the city of New York, in the said advertisement described," at the price and for the term above named, had been accepted, and then proceeded: "Now, therefore, the said contractor and his sureties do, jointly and severally, undertake, covenant, and agree with the United States of America to carry the mail of the United States, using such proper means therefor, and particularly the wagons hereinafter described, as may be necessary to transport the whole of said mail, whatever may be its size or weight, during the term of this contract. . . . And any new or additional mail station service which may become necessary and be required by the Postmaster General during the term of this contract. . . . It is further understood and agreed, that any increase in the service which may be rendered necessary by the removal to other localities of any of the above named stations, or by any other cause, may be ordered by the Postmaster General, and shall be paid for *pro rata;* and, also, that compensation, *pro rata,* shall be deducted in case of decrease in said service, caused by any such removal, or by the discontinuance of any of said stations."

Otis, while engaged in carrying the mails under this contract, and also under the contract for mail messenger service, set forth hereinafter in Finding No. 2, was directed by the postmaster in New York City to perform the following trips:

Eighteen round trips per week-from Station E, No. 465 Eighth Avenue, to the Hudson River Railroad depot, Thirtieth Street and Tenth Avenue; six trips per week from post-office to Harlem Railroad depot, Forty-second Street and Fourth Avenue, 6.30 A.M. train. These trips were duly performed. The service between Station E and the Hudson River Railroad depot amounted to 2784 miles. The allowance therefor under said station service contract would be $657.58. The service between the post-office and the Harlem Railroad depot amounted to 2607.82 miles. The allowance therefor under said station service contract would be $615.97.

As to No. 6635. Finding No. 2. The United States advertised March 1, 1877, by an advertisement headed, "*Mail Messenger Service, New York City*," for proposals, "for carrying the mails of the United States between the post-office in the city of New York and the railroad stations and steamboat landings, and between the several stations where transfer service is required, from July 1, 1877, to June 30, 1881," on Route No. 6635. The advertisement then proceeded: "The following schedule shows the mail messenger and transfer service now required at New York; but the accepted bidder under this advertisement will be required to perform, without additional compensation, any and all new or additional service that may become necessary during the term of the contract, whether to and between depots and landings now established or those which may be hereafter established. Bids must be made with this distinct understanding, and must name the amount per annum for the whole service, and not by the trip. There will be no diminution of compensation on account of the discontinuance of such portions of the service as may become unnecessary during the contract term; but deductions will be made for neglect of duty. . . .  .

*" Schedule of service now required.*

| Railroad. | Location of depot. | Distance from post-office to depot. | Number of trips per week from office to depot. | Number of trips per week from depot to office. |
|---|---|---|---|---|
| | | *Miles.* | | |
| Pennsylvania . . . . . . . . . . . | Jersey City . . . . . | 1.45 | 54 | 27 |
| Pennsylvania . . . . . . . . . . . | Foot of Cortlandt Street. | .45 | 50 | 50 |
| Erie Railway . . . . . . . . . . | Jersey City . . . . . | 1.63 | 43 | 57 |
| Northern Railroad of New Jersey . . | Jersey City . . . . . | 1.63 | 12 | 12 |
| New Jersey-and New York . . . | Jersey City . . . . . | 1.63 | 18 | 24 |
| Montclair and Greenwood Lake . . . | Jersey City . . . . . | 1.63 | 6 | 6 |
| New Jersey Midland . . . . . . | Jersey City . . . . . | 1.45 | 6 | 6 |
| Central Railroad of New Jersey . . . | Jersey City . . . . . | 1.63 | 49 | 37 |
| Delaware, Lackawanna, and Western . | Hoboken . . . . . . | 2.20 | 36 | 42 |
| New York and New Haven . . . . . | Grand Central depot . . | 3.23 | 50 | 44 |
| New York and Harlem . . . . . . | Grand Central depot . . | 3.23 | 18 | 18 |
| New York Central and Hudson River . | Grand Central depot . . | 3.23 | 45 | 71 |
| New Jersey Southern . . . . . . . | Pier 8, North River . . | .65 | 12 | 12 |
| Staten Island . . . . . . . . . | Foot of Whitehall Street. | .90 | 18 | 18 |
| Fall River Boat landing . . . . . . | Pier 28, North River . . | .58 | 6 | 7 |
| Long Island . . . . . . . . . . | Long Island City . . . | 3.85 | 36 | 36 |

*" Transfers.* Grand Central depot to Erie Railway, 3.35 miles, six times a week; Grand Central depot to Pennsylvania Railroad, 3.55 miles, twenty-four times a week; Grand Central depot (Boston line) to Grand Central depot (New York Central and Hudson River line), .35 of a mile, as often as required. The transfer service to include the conveyance of all cases of post-office supplies for transit through the city."

Under this advertisement Otis made a written proposal " to carry the mails of the United States, from July 1, 1877, to June 30, 1881, on mail messenger route, No. 6635, between the post-office at New York City and the railroad stations and steamship landings in said city, including transfers between stations, and under the advertisement of the Postmaster General, dated March 1, 1877," for the sum of $57,900 per annum. On the 13th of April, 1877, a written contract was executed by the United States and Otis, which recited that the proposal of Otis, under said advertisement, " for the performance of the mail messenger service at the city of New York, in the said advertisement described," at the price and for the term above named, had been accepted, and then proceeded: " Now, therefore, the said contractor and his sureties do, jointly and severally, undertake, covenant, and agree with

the United States of America to carry the mails of the United States, using such proper means therefor, and particularly the wagons hereinafter described, as may be necessary to transport the whole of said mail, whatever may be its size or weight, during the term of this contract, as follows, to wit:

"From the New York City post-office to the Pennsylvania Railroad depot (Jersey City) fifty-four (54) times per week; returning from said depot to post-office twenty-seven (27) times per week.

"From the New York City post-office to the Pennsylvania Railroad depot (foot of Cortlandt Street) and back fifty (50) times per week.

"From the New York City post-office to the Erie Railway depot forty-three (43) times per week; returning from said depot to post-office fifty-seven (57) times per week.

"From the New York City post-office to the depot of the Northern Railroad of New Jersey and back twelve (12) times per week.

"From the New York City post-office to the New Jersey and New York Railroad depot eighteen (18) times per week; returning from said depot to post-office twenty-four (24) times per week.

"From the New York City post-office to the Montclair and Greenwood Lake Railroad depot and back six (6) times per week.

"From the New York City post-office to the New Jersey Midland Railroad depot and back six (6) times per week.

"From the New York City post-office to the depot of the Central Railroad of New Jersey forty-nine (49) times per week; returning from said depot to post-office thirty-seven (37) times per week.

"From the New York City post-office to the Delaware, Lackawanna and Western depot thirty-six (36) times per week; returning from said depot to post-office forty-two (42) times per week.

"From the New York City post-office to the New York and New Haven Railroad depot fifty (50) times per week; returning from said depot to post-office forty-four (44) times per week.

"From the New York City post-office to the New York and Harlem Railroad depot and back eighteen (18) times per week.

"From the New York City post-office to the New York Central and Hudson River Railroad depot forty-five (45) times per week; returning from said depot to post-office seventy-one (71) times per week.

"From the New York City post-office to the New Jersey Southern Railroad depot and back twelve (12) times per week.

"From the New York City post-office to the Staten Island Railroad depot and back eighteen (18) times per week.

"From the New York City post-office to the Fall River Boat landing six (6) times per week; returning from said landing to post-office seven (7) times per week.

"From the New York City post-office to the Long Island Railroad depot and back thirty-six (36) times per week.

"*Transfers.* Grand Central depot to Erie Railway six times a week; Grand Central depot to Pennsylvania Railroad twenty-four times a week; Grand Central depot (Boston line) to Grand Central depot (New York Central and Hudson River line) as often as required.

"The transfer service to include the conveyance of all cases of post-office supplies arriving for transit through the city; each and every transfer to be made as often as may be required by the Postmaster General; and will do and perform all other mail messenger and transfer service now being performed in the said city of New York, and any and all new or additional mail messenger or transfer service in the said city, whether to and between depots and landings now established and those which may hereafter be established, which may become necessary and be required by the Postmaster General during the time of this contract, without additional compensation, said service to be performed at such hours of arrival and departure at and from the above designated points or places, or those which may be hereafter established, as the postmaster at New York City may order and direct.

*      *      *      *      *      *      *      *.      *      *

"It is hereby stipulated and agreed that the Postmaster Gen-

eral may, if it be required by the public interest, order new or additional service which may become necessary to be performed, which shall be performed without additional compensation; also, that he may discontinue or curtail the service, in whole or in part, if in his judgment the public interest shall so require, he allowing as full indemnity to the contractor one month's extra pay on the amount of service dispensed with, and a *pro rata* compensation for the amount of service retained and continued."

While Otis was engaged in the performance of this contract, the United States, on the 12th of November, 1878, directed him to transport mails which theretofore had been transferred, as required by the contract, "from the New York City post-office to the Pennsylvania Railroad depot (foot of Cortlandt Street) and back, fifty times per week," across the Hudson River to the Pennsylvania Railroad depot at Jersey City, in the State of New Jersey. This service Otis performed from November 12, 1878, to July 1, 1881. The *pro rata* compensation for it, as also its reasonable value, is $15,787.78. When the contract was executed, this extra service was being performed by the Pennsylvania Railroad Company, under contract with the United States.

The item for the extra service between Station E and the Hudson River Railroad depot, $657.58, and the item for the extra service between the foot of Cortlandt Street and Jersey City, $15,787.78, were allowed by the Court of Claims. The item for the extra service between the post-office and the Harlem Railroad depot, $615.97, was disallowed.

No error is assigned by Otis as to the disallowance of the $615.97. But the United States questions the propriety of the allowance of the other two items. They contend that the "eighteen round trips per week from Station E, No. 465 Eighth Avenue, to the Hudson River Railroad depot, Thirtieth Street and Tenth Avenue," were mail messenger service, under the contract for Route No. 6635, and not, as held by the Court of Claims, mail station service, under the contract for Route No. 6636. The argument is made that mail station service, under the latter contract, comprehended only service

between the city post-office and the stations or branch offices, and did not include service between a station or branch office and a railroad depot; and that the latter was mail messenger service, and was governed by the terms of the contract for Route No. 6635, which forbade extra compensation in regard to it.  Although it does not appear by the record what points were designated in the advertisement or in the contract for Route No. 6636, as those between which the mails were to be carried, the fair inference is that there was no specific desig- nation which would include the trips between Station E and the Hudson River Railroad depot.  The opinion of the Court of Claims says, on this subject, that this service was not "named in the station contract, but that instrument provided that any increase in mail station service should be paid for *pro rata*."  It held that the service was, on its face, station ser- vice, the mails being taken from a station.  The mail station service for which Otis proposed was designated in his proposal as "between New York City post-office and branch offices," and the "mail station service" named in the contract is re- ferred to as that for which Otis proposed.  Any increase in the service which might be ordered was to be paid for *pro rata*.  The service in question was an increase in the service, beyond that for which the $14,900 per annum was to be paid. The mail messenger contract for Route No. 6635 did not con- template mail station service, but only service between the main post-office and railroad stations and steamboat landings. The $657.58 was, accordingly, properly allowed.

As to the extra service to Jersey City, under the contract for Route No. 6635, the contract covered fifty-four trips per week, from the New York City post-office to the Pennsylvania Railroad depot at Jersey City, and twenty-seven trips per week from that depot to that post-office; and also fifty trips per week from that post-office to the Pennsylvania Railroad depot at the foot of Cortlandt Street; and fifty trips per week from the latter depot to that post-office.  The finding of the Court of Claims is, that on each occasion of a trip under the item of fifty trips per week from the post-office to the depot at the foot of Cortlandt Street and back, Otis was required, in

addition, to carry the mails across the Hudson River, and did so. These trips were no portion of the trips contracted for from the post-office to the Pennsylvania Railroad depot at Jersey City and back. It is also found by the Court of Claims that, when the contract was executed, this extra service in regard to the fifty trips was being performed by the Pennsylvania Railroad Company, under a contract with the United States. This extra service was not included in the routes designated in the contract.

The contract provides that Otis shall " do and perform all other mail messenger and transfer service now being performed in the said city of New York, and any and all new or additional mail messenger or transfer service in the said city, whether to and between depots and landings now established and those which may hereafter be established, which may become necessary and be required by the Postmaster General during the time of this contract, without additional compensation." There is this further provision : "It is hereby stipulated and agreed that the Postmaster General may, if it be required by the public interest, order new or additional service which may become necessary to be performed, which shall be performed without additional compensation."

It is contended for the United States, that, as Otis specifically agreed, in the contract, to carry the mails to the Pennsylvania Railroad depot at Jersey City, 54 times, and back 27 times, each week, in addition to carrying them to Cortlandt Street and back 50 times each week, the extra service across the river is "new or additional service," and so to be performed without additional compensation. But the fair construction of the two clauses of the contract, taken together, is, that the new or additional service which is to be performed without additional compensation is new or additional service in the city of New York, as expressed in the first clause. Especially is this so, as the contract specifically designates the 54 trips and the 27 trips as being to and from Jersey City, and then provides for 50 other trips to Cortlandt Street and 50 back. Under those circumstances, the limitation of the new or additional service to be performed without additional compensa-

tion, to such service in the city of New York, would be natural, service under the contract, and out of that city, and to Jersey City, being specially provided for in the case of mails deliverable at a depot of the Pennsylvania Railroad, at Jersey City, and service under the contract, and out of the city of New York, being also provided for in six other instances of delivery in Jersey City, and one in Hoboken, and one in Long Island City, at places to be reached only by ferries.

*Judgment affirmed.*