Davis, J.,
delivered tbe opinion of tbe court:
We are again required to mark tbe distinction between “new or additional” service and “extra” service under a “ mail-messenger ” contract. A similar point was presented in the case of Otis v. The United States (20 C. Cls. R., 315), where this court held that “new” service “was service similar in its nature to that embraced in tbe general intent of tbe contract, * * * while £ additional’ service was to be an increase of the service which tbe contract as a whole contemplated.” That case was affirmed upon appeal (120 U. S. R., 115). In tbe case at bar we find plaintiff to be contractor for substantially tbe same service as was Otis in tbe earlier case, that is, for tbe “mail-messenger ” service in tbe city of New Y ork upon tbe route bearing tbe number 6997. Plaintiff, like Otis, has been required to perform service which be alleges is “ extra,” and which tbe Post-Office authorities bold to be “new or additional.” To recover pay for tbe alleged “extra” service this action was begun.
Plaintiff’s counsel thus state their position:
“None of the new service established, and none of the additional service arising on route 6997, as described in tbe advertisement, is sought to be recovered in this suit; all of that was embraced m tbe terms of tbe contract; and whether tbe contract was a gaining or losing one, tbe claimant has no complaint against tbe United States; but for tbe extra service— that which, in tbe contemplation of tbe parties, never entered into tbe contract; that winch was neither new nor additional; that which was in operation on other routes by other means, and which was not specified or referred to in tbe advertisment, * * * is tbe service for which we are claiming.”
It should be remarked, before we preceed to examine the various items of this claim, that none of tbe service for which compensation is now asked was at the date of the advertisement and contract being performed, over postal route No. 6997.
The tenth paragraph of the contract required the contractor “to perform all new or additional mail-messenger, transfer, and mail-station service that the Postmaster-G-eneral may order at *313 tbe city of New York during tbe contract term without additional compensation.”
What, then, is “new or additional service” within the meaning of the contract? It certainly is not service differing in kind; but the service complained of as extra did not upon its face differ in kind from that usually required from a mail-messenger contractor; yet this service never had been performed by the contractor on this route, but had always been performed by other means.
The Supreme Court has instructed us “that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made.” (Merriam v. United States, 107 U. S. R., 441.)
In the case cited the contract contained a clause by which the plaintiff was to furnish a named quantity of oats, “more or less;” and as the quantity required was greater than that named he claimed the right to furnish it, i. e. the full amount needed; the defendants, however, elected to take the oats under another and lower contract, a contract precisely similar in phraseology to Merriam’s. The Supreme Court examined the circumstances under which the bids were made and the were opened, and held:
“It is perfectly clear, from these circumstances, that the officers of the United States who had this matter in charge did not understand the contract with appellant as he now claims to construe it. * * * These facts being known to the appellant, he could not have understood the contract sued on, which rvas made on the same day as the contract with Hall, as he now contends it should be interpreted.”
In Gibbons v. The United States (15 C. Cls. R., 174) this court, in construing a building contract, held:
“In construing a disputed clause of a contract three things should be considered: (1) The circumstances in the light of Avhicli the contract Avas made; (2) the general purpose of the contract and of other provisions directly or indirectly affecting the clause under consideration; (3) the language and effect of the clause itself.”
This case was affirmed upon appeal (109 U. S. R., 200), when Mr. Justice Matthews, avIio delivered the opinion, said:
“But without going into any refinements of merely verbal interpretations, we think the meaning of the parties, explained *314 by tbe circumstances attending tlie transaction, is sufficiently plain, and determine satisfactorily tbeir relative rights and obligations.”
Following the rule thus laid down in Gibbons’s Oase, we must (1) examine “the circumstances in the light of which the contract was made.”
At the date of the advertisement and the contract there ex-existed in New York City the following classes of messenger service: (a) The letter-carriers. (&) The service called the “designated mail messengers.” These messengers were em-ployés of the Post-Office Department, and, on foot and by use of the elevated railroad or the horse cars, they carried mail between the branch post-offices and the central post-office. (o) The mail-messenger service strictly so called; that is, the service this plaintiff contracted to perform.
The services which form the basis of this litigation (except the íátaten Island service and the Mexican steamship service) were being performed, when this contract was made, by the Government employés called “designated mail messengers,” and had been performed by them alone prior to the contract and to the date of the advertisement pursuant to which the contract was made. These services had never been performed by the contractor for the “ mail-messenger” (or wagon) service.
The “designated mail-messenger service” was in its essence a foot service, paid out of the “mail-messenger appropriation,” and the service could be terminated at any time, as in the case of other Government employés. Plaintiff’s service was in its essence wagon service, and was paid for out of the “ star-route? appropriation. It was duly advertised according to law, substantially as other star-route contracts, and let to the lowest bidder for the term of four years. Some of the routes later assigned to plaintiff (and as to which complaint is now made) were known when the contract was made as “mail-messenger routes” number 66354 (and so on), while plaintiff’s route was known, not as a “mail-messenger route,” but as “postal route No. 6997.” Of course these facts were necessarily known to the postal officers, and it is not shown that the mail of designated mail-messenger routes has ever before this instance been transferred to the contractor for wagon service.
(2) “The general purpose of the contract and of other provi *315 sions directly or indirectly affecting tbe clause under consideration.”
Tbe general purpose was “ wagon” service, not foot serviec. Tbe contract was for one specific route, No. 6997, “being tbe mail-messenger and transfer service at tbe city of New York; ” tbis service was to be performed “ in tbe wagons hereinafter described;” tbe contractor pledged himself “to carry said mail, using therefor wagons of tbe kind ” described in tbe contract, and “ in suffiicent number to transport tbe whole of said mail, whatever may be its size;” tbe mail was tobe carried “in substantial one or two horse wagons, of sufficient capacity for tbe entire mail; ” tbe style of tbe wagons was described in ample detail; tbe contractor was to “furnish the number of regulation wagons that, in tbe opinion of tbe postmaster at New York, will be sufficient for tbe prompt and proper performance of tbe service, including [necessary] extra wagons;” each driver was required to wear a cap or bat of prescribed pattern; in short, every clause of tbe contract shows that wagon service alonewas contemplated by tbe parties, not foot service, whether theretofore performed by letter-carriers or by “designated mail messengers.”
(3) “Tbe language and effect of tbe clause itself.”
The clause of tbe contract in dispute is tbe tenth. It requires tbe performance without additional compensation of service which was “new” or of service which was “ additional,” but also tbis service must be new or additional — not mail service generally — but “mail-messenger, transfer, and mail-station service” in New York. Some of tbe service in issue bad been performed since 186á by Department messengers, some by tbe steamship company, some by another star-route contractor; tbe service so existing prior to tbe contract’s date could not thereafter become “ new.” As to “additional service,” we have already said “ that it must be an increase of tbe service which tbe contract as a whole contemplated ” (supra); we do not think that a fair construction of tbis word “additional” would transfer to tbe wagon service, service already in existence, performed under other regular route numbers, paid out of other appropriations, and performed upon tbe elevated railroad trains, in horse cars, or on foot, or service theretofore performed by a foreign steamship company under a treaty provision.
*316 In this view of the case it becomes unnecessary to examine the understanding at the date of the contract of the Government officers and the plaintiff as to its intent. The plaintiff will recover for the service performed by him from branch stations which service had prior to his contract been performed by “designated mail messengers.” He will recover for service between the Mexican steamship wharf and the post-office, which service had previously been performed by the steamship company. He will not recover for increased number of trips between the post-office and Staten Island Ferry, as that service was properly “ additional ” to that he was pledged to perform “to the Staten Island Railroad Ferry, foot of Whitehall street, Hew York, Staten Island Railroad.” (See schedule in advertisement.)
Judgment for plaintiff in the sum of $46,580.
Peelle, J., took no part in the decision, the case having been argued before he took his seat.