Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff had a contract for handling the mails, in what is known as regulation screen wagons, for the period beginning July 1, 1911, and ending June 30, 1915, on route No. 437009, at Owosso, Mich. Mail service of this kind is let to the lowest bidder, after advertisement by the Post Office Department, calling for proposals. The annual compensation stated in plaintiff’s contract was $1,200. During the term of the contract, Congress passed the act of August 24, 1912, establishing the Parcel Post System, 37 Stat., 558. Among the provisions of that act is the following:
“ The Postmaster General may readjust the compensation of star-route and screen-wagon contractors if it should appear that as a result of the Parcel Post System the weight of the mails handled by them has been materially increased. Before such readjustment, however, a detailed account must be kept as to the amount of business handled by such star-route or screen-wagon contractors before and after this section becomes effective for such a period as to clearly demonstrate the amount of the increase and that such increase in the weight of the mails was due to the adoption of the Parcel Post System.”
Alleging that the weight of the mails which he was required to handle was largely increased by reason of the parcel post, the plaintiff sues for compensation additional to the contract price and claims he is entitled to it by virtue of *322 the act quoted, and also by virtue of the contract itself, which, he insists, required him only to carry mails of the kind and description contemplated and required to be carried by the law as it existed when the contract was made. His first contention is that the act did not devolve a mere discretion but imposed a positive and absolute duty on the Postmaster General to increase the compensation being paid the plaintiff, and he relies on the rule stated in Supervisors v. United States, 4 Wall., 435; Galena v. Amy, 5 Wall., 705; United States v. Cornell Steamboat Co., 202 U. S., 184, and some other cases cited by him, to the effect that language, permissive in form, is mandatory, where the act confers power upon an officer to do an act for the benefit of third persons. The rule is not applicable in the present case, because plainly an execution of the authority conferred bjr the act involved the exercise of jtidgment and discretion on the part of the Postmaster General which this court is without power to supplant or to exercise. We can not agree with plaintiff’s contention that the elements of determination of his rights under this statute “ leave nothing to inference or discretion.” It is quite true that the Postmaster General was authorized to readjust the compensation of star-route and screen-wagon contractors if it should appear that, as a result of the Parcel Post System, the weight of the mails handled by them had been materially increased; but there must have been a materially increased weight of mails, and it must have resulted from the Parcel Post system. A mere increase in the weight, though it be a material increase, is not sufficient. The result must follow from a given cause.
And before the readjustment can be made the act requires the keeping of a detailed account as to the amount of business handled (1) before the-act becomes effective, and (2) after it becomes effective, for such a period as to clearly demonstrate “ the amount of the increase ” in the weight and that it “was due to the adoption” of the system. The Postmaster General ordered, and there was kept, a detailed account of weights for stated periods before and after the act went into effect, and he decided that plaintiff was not entitled to an increase of compensation. It can not be successfully maintained that the act lays down a definite rule of *323 compensation or that it prescribes a readjustment in conformity with a definite rule. The periods for keeping the detailed accounts of the amount of business handled were to be determined by the Postmaster General, but the length of period that might satisfy him might not “ clearly demonstrate ” to another the amount of the increase or that such increase in the weight was due to parcel post. And if satisfied that there was an increase in weight, due to parcel post, it by no means follows that the act requires additional compensation to be paid upon the basis of the percentage of increase shown in the two periods of keeping the detailed accounts. The act refers to star route and screen wagon contractors alike, and it can not be said that weight of the mails handled furnished the sole criterion for the bids by these contractors to handle the business.
Indeed, in another case before the court, argued when this case was heard, the contractor claims that he is entitled to increased compensation, principally because the number of his trips was increased by the parcel post. The number of trips required, the distances to be traversed, the necessary equipment to be provided, the general expense to be incurred, as well as the weight of mail handled, all entered into the question of. compensation when the bids were made and accepted, and it is the readjustment of this compensation that the act authorizes the Postmaster General to make under the conditions stated. The fact, therefore, that the account for the period after the act became effective showed an increase of 24.7 per cent in weight, over what the earlier account showed, does not suffice to determine that the same percentage of increase of compensation is required or proper. This fact was before the committee appointed to act and report to the Postmaster General, and it appears that it was not deemed sufficient to show that the increase in weight authorized a readjustment. Other considerations entered into the reckoning. The act was necessary to authorize any increase of pay to the contractors, because their contracts were for definite periods, upon stated compensation. The Postmaster General was, therefore, without authority to change a material stipulation in the written contract, awarded, and required so to be, upon competitive bidding, by increasing the *324 compensation, until be was authorized by the act in question. The extent, however, of the “readjustment,” or the amount to be allowed, in any given case, is not stated, and was to be determined by the Postmaster General, upon consideration by him of facts and conditions existing, and to be ascertained, under the rules laid down by him. For it is to be noted that the length of the periods of account was for him to determine, the statute merely requiring that these periods should be sufficiently long “to clearly demonstrate” the amount of the increase, and that such increase in the weight was due to parcel post. The demonstration here referred to is manifestly to be made to the Postmaster General.
The cases relied on by plaintiff do not oppose these views. Parish v. McVeagh, 214 U. S., 124, arose upon a petition for mandamus to require the Secretary of the Treasury to issue to plaintiff a draft for a stated sum. The ultimate question in the case was that of the power of the Secretary under an act of Congress. In the opinion, page 131, the Supreme Court declare that if the Secretary had the power, which he asserted, to review certain evidence, and to make such findings as might “seem right and proper to him,” the judgment of the lower court would be affirmed, because the court could not control the officer’s discretion. Riverside Oil Co. v. Hitchcock, 190 U. S., 316, 324. The Supreme Court held that the act in controversy Avas intended to grant relief to which Parish Avas entitled and the items of which had been established. “Its purpose,” say the court, page 137, “was relief shown to be due from a problem already solved, not to start another problem.” If a reference to evidence was required, it was to evidence whose probative force had been estimated and declared and which conduced to but one conclusion. It was accordingly held that the writ should issue. There was no suggestion that Parish could have sued under the act in the Court of Claims.
Nor is the case analogous to that of Laughlin, 52 C. Cls., 292; 249 U. S., 440. In the latter there appeared a general statute authorizing the repayment to him of money in excess of what the applicant was lawfully required to pay under the public land laws. The act vested power in the Secretary of the Interior to decide the question. The Court of Claims *325 took jurisdiction because Laughlin’s claim was founded on a law of Congress, and the act did not vest a discretion in the Secretary of the Interior or grant him exclusive jurisdiction. Medbury Case, 173 U. S., 492. The amount of any excess payments was fixed by the law, once it was ascertained what amount had been paid, because the law fixed $1.25 as the price per acre of the land. No such conditions appear in the instant case nor in the act under which the plaintiff claims. Under this act the amount to be paid, if anything, is to be determined in every case by some one upon facts that necessarily vary with the different cases, and that some one is designated to be the Postmaster General. No definite rule for compensation is stated. The question of whether the weights have been “materially” increased was to be decided, as also whether that material increase was caused by the parcel post. When after keeping detailed accounts, for a period before and one after the act became effective, and finding that the weights, during the latter period were about 25 per cent above those for the earlier period, he yet decided that plaintiff was not entitled to increase of compensation, it is plain that the Postmaster General did not consider that the comparative weights during said periods clearly demonstrated the amount of the increase, or that it was due to the parcel post. His conclusion was reached because, in connection with these facts, he considered others, as he certainly had the right to do. Among others were the facts that he called for a statement by the contractor himself, who, under oath, stated that he had not been subjected to additional expense in performing the service, as a direct result of parcel post, and answered a number of questions relative to the effect of the establishment of the system.
We can not conclude that the act under consideration authorizes us to review or control the Postmaster General’s action. In our opinion, it vested in that officer a discretion which, so far as shown by the record, has not been abused. Atchison, Topeka & Santa Fe Ry. Co. Case, 249 U. S., 451.
• 2. The plaintiff is not entitled to recover upon the second point advanced by him. The contract under which he undertook the service was comprehensive in terms and.bound the contractor to handle increases in mail, or render in *326 creased service, as well as to make necessary additional trips. Congress recognized that cases could arise, by reason of the parcel post, that would call for readjustments of compensation, and hence they reposed in the Postmaster General the power to readjust the compensation, where, in his judgment, the facts of a particular case justified the same, and the power, as has been said, was not given to the courts.
The Roberts Case, 6 C. Cls., 84, which was reversed by the Supreme Court, 92 U. S., 41, presented an entirely different state of facts from those in the instant case, and even in that case three of the justices dissent, upon the ground that the effect of the judgment was to make a contract where the parties had made none. The court’s conclusion, however, was based upon'the consideration that Congress had authorized by special act a suit by the plaintiff in the case, and, in the language of the opinion, the case, if against an individual, “ would present a clear case of departure from the terms of a contract by the mutual consent of the parties, and the performance of extras by the contractor, for which he would be entitled to the reasonable value of the work performed.” In that case the contractor not only protested against doing the work, but performed it under an understanding that the contractors would apply to Congress for additional remuneration. .They did so apply, and Congress authorized suit under the act mentioned.
The Otis Case, 20 C. Cls., 315; 120 U. S., 115, involved the construction of two contracts, one for mail station service and the other for mail messenger service. The Supreme Court held that one of the items of claim was for service not covered by one contract, and another item was for service outside of the territory included in the terms of the other contract. Both courts held that a third item was included in the provisions of the contract, though it was for service between points not specifically mentioned. Any increase in the “mail station” service was, by the contract, to be paid pro rata,.and the allowance was on that basis.
The other cases cited do not militate against our view.A term of the contract was that plaintiff bound himself “to transport the whole of said mail, whatever may be its size, weight, or increase, during the term of this contract.” *327 The increase, whatever it was, was authorized mail matter. The contractor stated that it did not materially increase his expenses. There was no protest against the increased service (as in the Know Case, 30 C. Cls., 59, and other cases). The letter he wrote in August, 1914, being a request for “ increase in salary” of 50 per cent for parcel post and 25 per cent for transfer of mail is far short of a protest against doing the work. He had been paid monthly and received the pay without objection. After this letter he repeated his statement that “no additional expense” had been incurred. New York, New Haven & Hartford R. R. Co. Case, 53 C. Cls., 222. See Kansas City, Mexico & Orient Ry. Co. Case, 53 C. Cls., 258, and cases cited, pp. 310, 312; Atlantic Coast Line R. R. Co. Case, 53 C. Cls., 638.
The petition is accordingly dismissed.
Graham, Judge; Hat, Judge; DowNet, Judge; and Booth, Judge, concur.