Casey, C. J.,
delivered the opinion of the Court.
On the 2d June, 1862, the Navy Department published an advertisement inviting proposals for “ blue woollen knit undershirts and drawers” to supply the navy yards at Charlestown and Brooklyn, to be delivered in such quantities of either as the chief of the Bureau of Provisions and Clothing might order, for the year commencing the 1st July, 1862.
The claimant and his partner, who has since deceased, by their agents proposed to furnish these articles at a stipulated price. Their proposal is dated the 23d of June, 1862, and was accompanied by a written guarantee, with sureties, that if their bid was accepted they would, within ten days, enter into an obligation with good and sufficient sureties for the fulfilment of their engagement. On the 28th of the same month these parties were notified by the department that their offer had been accepted, aud that a contract would he prepared as early as practicable and transmitted to them for execution.
The written contract, as afterwards executed, hears date the 8th day of July, 1S62. The claimants performed their contract and received the stipulated price. This controversy grows out of a collateral matter. On the 1st July, 1862, an act was approved imposing certain taxes or duties oil articles of the description embraced in the contract. Under the provisions of this statute there was assessed (and paid by the claimant"' upon the articles delivered under this* *193 contract the sum of three thousand four hundred and thirty-seven dollars and four cents, (f3,437 04.) They applied to the Commissioner of Internal Revenue to have this amount refunded, which was refused, and this suit was brought.
His right to recover depends mainly upon when the contract between him and the government was consummated. Was the contract •complete when the proposal was made by the claimant and accepted by the Navy Department ? or did it only take effect as a valid contract when it was reduced to writing, signed by the parties, and filed .'in the returns office?
These questions become of- importance in the case, because, on the 1st July, 1862, between the date of the acceptance of the bid and- the signing of the contract, the internal revenue law was passed imposing a certain tax upon manufactures of this description. A proviso to the G9th section of that act enacts: “ That the taxes on all articles manufactured and sold in pursuance of contracts bona fide made before the passage of this act shall be paid by the purchasers thereof, under regulations to be established by the Commissioner of Internal Revenue.”
The Commissioner of Internal Revenue, in pursuance of this act, established a regulation that the manufacturers., should pay the tax in such case and collect it from the purchaser; aud that manufacturers of goods for government should pay the tax as if they were manufacturing for individuals. (Boutw. Tax L., Ed. 1863, p. 222.) This - regulation was afterwards rescinded and the assessors and collectors directed not to assess' or collect taxes on goods manufactured for government under contracts prior to 1st July, 1862. (lb., pp. 276 — 281.)
The claimant sets forth these facts, and upon them claims to recover back the money so paid, alleging that the articles were not subject to a tax under the act ,• or if so, that, in virtue of the proviso cited, the, purchaser, which was the government in this case, was bound to pay it.
The United States by their Solicitor demur to the petition, and assign for cause of demurrer, that the facts set forth in the petition, and above recited, show that no final and complete contract existed between the claimant and the United States until the 8th day of July, 1862, when it was reduced to writing and signed; and that, consequently, the tax was rightly assessed and collected, and the claimant cannot recover.
We think this contract was complete on the 28th June, 1862, when *194 the claimant’s proposals were accepted by the Navy Department. He and his sureties from that time were bound not only to furnish the articles of clothing, blit to enter into the further obligations and stipulations provided for in the advertisement. If he had refused to execute the contract as prepared, or to furnish the security, he and his guarantors were liable for the difference in cost to which the government would have been subjected by his failure, in the shape of liquidated damages.
The principle on which the case rests is analogous to where one party makes an offer to another by letter. That other party prepares and mails his answer accepting the proposal. From that instant the contract becomes mutual and binding upon the parties, for that was the point of time at which there was a full and distinct accord between them. In whatever form, or by whatever solemnities, it may after-wards be evidenced, that is the time to which its inception and original vitality relate. (1 Pars, on Con., p. 407.) It is also like an agreement for insurance, where no policy is made out and delivered at the time, but is to be made and handed over at a future time. If the property so agreed to be insured is in the mean time consumed, or perishes by one of the perils agreed to be insured against, the insurers,, in that event, are liable the same as if the policy had been made out and delivered. The policy is not the contract; it is but the evidence of it. (Hamilton v. The Ins. Co., 5 Barr., 339; Tayloe v. The Ins. Co., 9 How., 390; Adams v. Linsdell, 1 Barn. & Ald., 681.) "We virtually decided the same point in this court in the ease of Moore & Boice v. The United States.
The provisions of the several acts of Congress requiring advertisements inviting proposals for supplies in the departments appear to have been fully complied with. But there is nothing in those acts from which it can be legitimately inferred that Congress intended that the United States should not be bound by its acceptance of the offer made in such case, but that the other party should be. In other words, that the contract should not take effect as to both parties at the same time y that the contractor should be bound from the date of acceptance, and the United States from the date of the written contract, executed after-wards. This would contravene all our notions of a contract derived from the common or civil law, or from the usage of mankind and the course of business. , The binding force and efficacy of a contract begins to operate on both parties at the same instant. To be a contract at all it must be mutual, and it cannot possess mutuality if there is any period or instant when it binds one party and not the other.
Mr. J. D. McPherson for claimant.
Mr. J. J. Weed, the Assistant Solicitor, for the government.
The act of 2d June, 1862, requiring officers making contracts to sign them at the end, make affidavit of their correctness, and file a copy of each of such contracts in the returns office, has nothing to do with the case. The law does not make the doing of those things prerequisites to the yalidity of the contract. Nor would the failure of the officer to perform his duty in this respect affect the validity of the contract, either so far as the claimant or the United States is concerned. It would subject him to the penalties prescribed in the act for neglect or dereliction of duty; and, indeed, was intended as a better security to the United States against the fraud and collusion of their own officers.
Upon the facts set forth in this petition, we think the assessment and collection of the tax upon the articles delivered under the contract was not authorized by law.
"We therefore overrule the demurrer.