Atkinson,
delivered the opinion of the court:
This is an action for damages for the breach of an express contract by the defendants. The facts briefly stated are as follows:
On February 28, 1898, the Postmaster General issued and published an advertisement inviting sealed proposals for furnishing stamped envelopes and newspaper wrappers in such quantities as might be called for by the department during the period of four years, beginning the first day of October, 1898. Eleven proposals were submitted, and claimant’s being the lowest in the aggregate, according to the department’s formulas, was accepted, and on April 20, 1898, it was awarded the contract by James A. Gary, at that time Postmaster General. The next day (April 21) the Third Assistant Postmaster General mailed to claimant a contract *19 in quadruplicate, requesting it to sign, execute, and return the same to the Post Office Department. This the claimant . did on the 22d of April (the day following its receipt), and accompanied the same with a bond as required in the penalty of $200,000 duly executed by the Fidelity & Deposit Co., of Baltimore, Md., for the faithful performance of the contract. Postmaster General Gary retired from office on the 21st day of April, 1898, without signing said contract and was on that day succeeded in office by Charles Emory Smith as Postmaster General. On April 27, claimant telegraphed the Post Office Department that it had made arrangements for the necessary drawings, and had contracted for the white and amber paper for the term of the contract period. Under date of that same day the Third Assistant Postmaster General replied by saying that the Postmaster General (Charles Emory Smith) had not signed the contract, but was holding the matter in abeyance, and requesting claimant to suspend all action under the department letter of April 21 until further orders. Thereafter, on July 22, 1898, Postmaster General Smith rescinded the order of his predecessor which awarded the contract to claimant, and on the 8th day of August, 1898, new proposals were called for by advertisement of the department, and on October 25, 1898, a new contract was let to the Plimpton Manufacturing Co. and the Morgan Envelope Co., covering the period for which claimant had contracted with the Government to furnish the envelopes and newspaper wrappers for the Post Office Department. The contract price which claimant avers it was to have received was $2,460,556.22, and the estimated cost of furnishing the same, as made by claimant, was $1,833,-650.57, -which indicates an anticipated profit of $626,905.65, and to recover said amount this suit was instituted.
When claimant learned that the Post Office Department contemplated annulling the award made to it by Postmaster General Gary for the supplying of the envelopes and newspaper wrappers, it brought a suit in July, 1898, in the Supreme Court of the District of Columbia to enjoin the department from taking such action (Washington Law Reporter, 1898, 515). The proceedings in said court are filed as an exhibit to claimant’s amended petition herein.
*20 One of the questions presented for determination upon which the case must turn, is whether the words in the advertisement of February 28,1898, “ Sealed proposals are invited, and will be received at this [Post Office] department until 12 m. on Wednesday, the 30th of March, 1898, for furnishing stamped envelopes and newspaper wrappers in such quantities as may be called for by the-department for the period of four year's, beginning on the 1st day of October, 1898 ” (Finding II), are a sufficient compliance with the statute to authorize a proposal for that service alone by the claimant and acceptance by the Postmaster General. This court has held, except in certain cases of emergency, that all contracts between individuals and the Government are void unless they are made upon advertisements for proposals previously published, and that a compliance with such statutes is a condition precedent, upon the performance of which only can a binding contract with the Government be made by its officers. It acts by its public officers, and their powers and duties are prescribed and limited by laws which they must follow.
The defendants maintain that, although the advertisement for proposals was duly and regularly made by the Post Office Department; that claimant was the lowest bidder; that its bid was accepted; that the Postmaster General prepared, or caused to be prepared, a contract which was forwarded to claimant for its signature and acknowledgment; that the contract was duly signed and acknowledged by claimant, and was promptly returned to the Post Office Department with an accompanying bond in the sum of $200,000, conditioned upon the faithful performance of the contract; yet, it is insisted by defendants that it was not a completed and binding contract until it was signed by the Postmaster General. Many authorities are cited to sustain this contention.
Claimant relies mainly upon the case of Garfield v. United States (93 U. S., 242), which in all of its important features is identical with the case at bar; and also upon the decision of the Supreme Court of the District of Columbia, in the case now in hearing, wherein claimant sued out an injunc *21 tion to restrain the Postmaster General from letting the work covered by the contract herein involved to other parties. The court in its opinion in the injunction proceedings, inter alia, said:
“ The defendant resists the granting of the injunction upon the grounds, first, that the complainant had no contract, and, second, that if it had, a court of equity has no jurisdiction to grant an injunction, there being, as he contends, an adequate remedy at law. As to the first ground of objection, it was held by the Supreme Court of the United States in the case of Garfield v. United States (93 U. S., 242), that the awarding of a contract to a party by the Postmaster General pursuant to an advertisement by him and a bid by the person to whom the award was made, constitutes a complete contract as fully as if the formal contract had been reduced to writing and signed by the parties. The grounds for holding that there is a contract in this case are much stronger than in the Garfield case. In that case nothing was done after the award by the department, while here the formal contract was furnished under the direction of the Postmaster General and sent to complainant with a request to sign and return it, which was promptly done. Not only this, but on the same day the contract was sent to complainant for its execution, another letter was written and sent it by the department in which instructions were given for the execution of some of the work to be done tinder the contract, and in express terms acknowledging the contract as existing between the parties at the time. Under these circumstances it is immaterial that the Postmaster General did not or has not signed the contract. On its return to the department, signed by the complainant, it became as binding upon the Government as if it had been signed by the Postmaster General.”
The court, after referring to the jurisdiction of a court of equity and to the rule that the existence of an adequate remedy at law “ is always a conclusive answer to an application for an injunction,” held that “the only remedy of the complainant for damages for a breach of its contract would be a suit against the United States in the Court of Claims, * * *. The facts in this regard show that the complainant can be, in contemplation of law, fully compensated in money for any damages it may sustain by a refusal on the part of the Postmaster General to perform *22 the contract, and that such sum can be proved and recovered in the Court of Claims. There is no ground shown, therefore, authorizing the court to enjoin the defendant from violating the contract, and the injunction must be denied.”
The Supreme Court decision in the Garfield case {supra) contains these words:
“ The -Court of Claims holds that the proposal on the part of Garfield, and the acceptance of the proposal by the department, created a contract of the same force and effect as if a formal contract had been written out and signed by the parties. Many authorities are cited to sustain the proposition. We believe it to be sound, and that it should be so held in the present case.” {Id., 244.)
The following decisions also have a direct bearing upon the case before us: Adams v. United States (1 C. Cls. R., 192); McCollom v. United States (17 C. Cls. R., 92); Schneider v. United States (19 C. Cls. R., 547); Proffit v. United States (42 C. Cls. R., 248); Chicago v. Greer (76 U. S., 726); Sanders's case (144 N. Y., 209).
The foregoing decisions, and many others along the same line which we do not deem necessary to review, all agree that the principal, if not the sole question involved in a case of this character, is whether there was a meeting of the minds of the parties in interest upon a distinct proposition, manifested by an overt act. If so, a contract was created — - was made between the parties to this suit; if otherwise, no contract was effectuated. Taking together the department’s specifications, the advertisement for bids, the awarding of the contract, the preparation of the contract by the defendants, the signing of the same and its delivery by claimant, and the furnishing of the required bond, all show a concurrence of the minds of both of the parties to the contract, which therefore render it a contract as binding in law as if it had been signed by the Postmaster General.
It is further contended by counsel for the defendants that the advertisement and specifications required the successful bidder to furnish a bond of $200,000, which must be satisfactory to and approved by the Postmaster General, and that although such bond was furnished, it does not appear that it was thus approved. The language of the specifications upon *23 this subject is as follows: “ In the case of a guarantee company, the Postmaster General must be satisfied of its responsibility.” It may be conceded that such satisfaction on the part of the Postmaster General was a necessary condition precedent to the completion of a binding contract. But how was such satisfaction to be manifested ? It would seem that it could be made known in no better and more effectual way than by silence upon that subject and refusing to sign the contract on other grounds. Any other interpretation of this provision would be palpably unjust to the contractor whose bid had been accepted, for if the guarantee company was unsatisfactory to the Postmaster General, notice of that fact should be given so a different guarantee company could be offered. But nowhere does it appear that either the character, quality, or sufficiency of the bonding company was eveb raised or considered by the Postmaster General or any of his subordinates, or that the contract was canceled for that reason. Hence the presumption necessarily follows that the contract was abrogated for some other reason than the insufficiency of the bond, or that fact would have been made known to the claimant, which was not at any time done. In other words, it is apparent that if there had been any objection to the bond, it would have been mentioned in the order of the Postmaster General dated July 22, 1898, rescinding claimant’s contract. Said letter is quoted in full in Finding XIX.
Having decided that the contract, although not formally signed by the Postmaster General, was legal and binding, it follows that the order of that officer arbitrarily rescinding it was a breach thereof. The following recognized authorities are sufficient to show what constitutes breaches of contracts:
“A breach of contract may arise in any one of three ways, namely-: By renunciation of liability under the contract, by failure to perform the engagement, or by doing something which renders the performance impossible.” (7 A. & E. Ency. of Law, 149, 150; Roehm v. Horst, 178 U. S., 1.)
“ Where one party to an executory contract prevents the performance of it, or puts it out of his power to perform it, the other party may regard it as terminated and demand whatever damages he has sustained thereby.” (Lowell v. St. Louis Mut. Life Ins. Co., 111 U. S., 264, 276; Garfield v. United States, 93 U. S., 242.)
*24 “ It is now a well-settled rule that if a person enters into a contract for services, to commence at a future day, and before that day arrives does an act inconsistent with the continuance of the contract, an action may be immediately brought by the other party.” (Howard v. Daly, 61 N. Y., 302, on review of the authorities, English and American.)
“ If one party to a contract has destroyed the subject matter, or disabled himself so as to make performance impossible, his act is equivalent to a breach of the contract, although the time for performance has not arrived, and also, if the contract provides for a certain series of acts, and only default is made in the performance of one of them accompanied by a refusal to perform the rest, the other party may not perform but treat the refosal as a breach of the entire contract and recover accordingly. The doctrine that there may be an anticipatory breach of an executory contract by an absolute refusal to perform it has become the settled law of England as applied to contracts for services, for marriage, and for tire manufacture and sale of goods.” (Roehm v. Horst, supra.)
The findings show that claimant having fulfilled all the requirements of the Post Office Department and being ready and willing to furnish the envelopes and newspaper wrappers provided by the contract, it was, therefore, not within the power of the Postmaster General to revoke it without showing some failure on the part of claimant or some just or legal cause for such action.- It is well settled that “ when the Government enters into a contract with an individual or corporation it divests itself of its sovereign character so far as concerns the particular transaction and takes that of an ordinary citizen; and it has no immunity which permits it to recede from the fulfillment of this obligation.” (U. S. v. N. A. C. Co., 74 Fed. R., 145, 151; Southern Pacific Co. v. United States, 28 C. Cls. R., 77-105.)
“ If it [the United States] comes down from its position of sovereignty and enters the domain of commerce, it submits itself to the laws that govern individuals there.” (Cooke v. United States, 91 U. S., 398.)
It is not contended that claimant at any time consented to the annulment of the contract, or that the contract contains any provision authorizing the Postmaster General to annul it in the manner it was done. As a matter of fact, no reason *25 whatever was given by that officer for abrogating the same. He did, however, in the equity suit brought by claimant in the Supreme Court of the District of Columbia {swpra) seek to justify his annulment of the contract on the ground that he had “ concluded that the claimant was not a suitable or proper person or body politic to be intrusted with the carrying out of the said contract.” The District of Columbia Supreme Court conclusively, and we think correctly, answered this allegation in these appropriate words:
“ But there is no stipulation or provision in the contract authorizing the defendant to void or annul it on that ground. The contract does contain stipulations empowering the defendant to abrogate it if the complainant should make certain failures or defaults, or commit certain frauds in the execution thereof, but nothing that can be construed to give him power to annul it because he may have entertained the belief, however well founded, that the complainant is financially or otherwise unable or unfit to perform the work. By the terms of the contract he must wait some actual default or wrong in the performance of it before he has power to revoke it.”
Such contention by defendants we decide could only be considered prior to the awarding of the contract, and if found to be justifiable would be proper grounds for refusing to award the contract; but if an error was made in letting the contract, neither Postmaster General Gary, who made it, nor his successor, Postmaster General Smith, who rescinded it, possessed the power under the law to arbitrarily annul it.
Inasmuch, therefore, as there was a breach of the contract by the defendants, claimant is entitled to recover damages therefor, the measure of which is the difference between the price fixed in the contract for the envelopes and newspaper-wrappers and the cost of furnishing them, “making a reasonable deduction for the less time engaged and for release from the care, trouble, and responsibility attending a full and complete execution of the contract.” (United States v. Speed, 8 Wall., 77, 84.)
The principle involved in the case at bar is clearly and concisely expressed by the Supreme Court in the Case of *26 Philadelphia, W. & B. Co. v. Howard (13 How., 512). At page 527 the court said:
“ * * * Actual damages clearly include the direct and actual loss which the plaintiff sustains. And in a case of a contract like this that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exercises his skill, uses his capital, and assumes the risks which attend the en-terpise. And to deprive him of it when the other party has broken a contract and willfully put an end to it would be an injustice. There is no rule of law which requires us to inflict this injustice. Wherever profits are spoken of as the subject of damages, it will be found that something contingent upon future bargains or speculations or status of the market is referred to and not the difference between the agreed price of something and its ascertainable value or cost.”
In the case of United States v. Behan (110 U. S., 338, 344), which involved the question of profits under breach of contract similar to the case we are considering, it was decided:
“ The prima facie measure of damages for the breach of contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing performance of the contract, without fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct elements or grounds of damage, namely: First, what he has already expended toward performance, less the value of materials on hand; secondly, the profits that he would have realized by performing the whole contract. The second item, profits, can not always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Ch. J. Nelson, in the case of Masterson v. Brooklyn (7 Hill, 69), they are the direct and immediate fruits of the contract and they are free from these objections, they are then part and-parcel of the contract itself, entering into and constituting a portion of its very elements; something speculated for, the right of the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. * * * If he [claimant] goes for profits, then the rule applies as laid down in *27 SpeecPs case, and his profits will be measured by tlie difference between the cost of doing the work and what he was to receive for it.”
In the case before us the contract was awarded by the Postmaster General to claimant; the contract was signed and returned to the Post Office Department by claimant with bond of $200,000 accompanying it; arrangements were made by claimant to procure the necessary materials to carry out its contract, and three months and two days after awarding the contract it was annulled by an executive order of the Postmaster General. This renunciation went to the whole of the contract and was absolute and unequivocal, which brings it within the above-quoted authorities, and therefore entitles claimant to reasonable damages in the way of profits under the contract it was prohibited from executing.
From what we have said above, our conclusion is that claimant is entitled to a judgment against the United States for the sum set forth in Finding XYI of $185,881.76, which is accordingly ordered.