## UNITED STATES v. OKLAHOMA GAS & ELECTRIC CO.

(Circuit Court of Appeals, Eighth Circuit. February 29, 1924.)

No. 6364.

1. **Constitutional law** ☞154(2), 298(7)—**Electricity** ☞11—**State may regulate rates of electric company; "impair obligation of contract;" "taking of property."**

A state in the exercise of its police power may regulate rates to be charged by an electric and power company, and the exercise of such power is not an "impairment of the obligations of contracts" nor the "taking of property" without due process of law in a constitutional sense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Impairing Obligations of Contract; Taking (In Eminent Domain).]

2. **Electricity** ☞11—**Law in force when contract is made becomes part of it.**

A contract with an electric light and power company for the furnishing of light and power, made when a law of the state authorized a state commission to regulate the rates of such companies, is subject to such future regulations.

3. **Public service commissions** ☞7—**Power to regulate rates of public service companies cannot be affected by private contracts.**

Parties by contract cannot take from a commission the power given it by the state to fix rates for service furnished by public utilities.

4. **United States** ☞70(1)—**Business contracts governed by same rules as those of individuals.**

Under a contract by the United States with an electric company for the furnishing of light and power by the latter, the government has no greater rights than a private individual would have.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the United States against the Oklahoma Gas & Electric Company. From a decree denying an injunction, and dismissing the bill, the United States appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. A. Maurer, U. S. Atty., and J. W. Scothorn and Roy St. Lewis, Asst. U. S. Attys., all of Oklahoma City, Okl.

Robert M. Rainey, of Oklahoma City, Okl. (Streeter B. Flynn and Calvin Jones, both of Oklahoma City, Okl., on the brief), for appellee.

Before SANBORN and KENYON, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge. This appeal is from the judgment and decree of the District Court of the United States for the Western District of Oklahoma in an action brought by the United States of America against the Oklahoma Gas & Electric Company, a corporation, arising out of the following described situation: May 25, 1918, the United States, appellant here, made a contract with the Oklahoma Gas & Electric Company, appellee, by the terms of which appellee was to furnish to appellant at Ft. Reno Remount Depot in Canadian county, Okl., electric current for illumination and motor purposes at certain rates per kilowatt, for a period extending from July 1, 1918, to June 30, 1919, with the option to further extend said contract year by year. Appellant prior to June 30, 1919, and again prior to June 30, 1920, exercised the option to extend the contract, and the same was in force at the time the events transpired productive of this controversy.

In October, 1921, appellee refused to comply with the terms and conditions of the contract unless appellant would pay rates higher than those fixed in the contract; said rates having been filed with the Corporation Commission of Oklahoma by appellee and approved by it.

Appellant asked an injunction restraining the appellee from turning off the electric current to Ft. Reno Remount Depot, and also that a mandatory injunction issue commanding appellee to carry out the terms of the contract.

At the time the contract was entered into there existed by virtue of the statutes of Oklahoma a body known as the Corporation Commission of the State with general regulatory and supervisory power over all public utilities, with authority to fix and establish rates. Chapter 93, Laws of 1913. The statutes of Oklahoma likewise define the term "public utility" as including every corporation, association, company, individual, etc., operating or managing any plant or equipment for the production, transmission, delivery, or furnishing electric current for light, heat, or power.

On the 18th day of October, 1918, the Corporation Commission of Oklahoma, in case No. 3542, made an order, No. 1520, which is attached as an exhibit to the answer and is without dispute, by the terms of which the Commission approved a schedule of rates as to electric current in the city of El Reno, Okl., filed by appellee, which rates were higher than those provided in the contract hereinbefore referred to. Later in an investigation relative to the reduction of electric rates of El Reno, before the Corporation Commission of the state, in cause No. 4388, order No. 1988, some reduction was made as to the rates approved in the order of October 18, 1918.

This case was tried upon an agreed statement of facts. The trial court found appellant's bill to be without equity, and dismissed the same.

Certain assignments of error are presented. The third raises the question as to the order of the Oklahoma State Corporation Commission relative to the rates applying at all to Ft. Reno Remount Station. This assignment, however, is not argued by appellant, and hence apparently not urged or relied on. Therefore we pass to the other assignments, all of which raise the one question, viz., did the rates under the original contract made between the parties stand as against the order of the Oklahoma State Corporation Commission authorizing and approving an increase in such rates?

[1] Appellant contends there was no power in the Oklahoma State Corporation Commission to increase the rates of the contract. It cannot well be claimed that the state was powerless in the exercise of its police power to regulate rates charged by an electric light and power company in its business of supplying electricity to the people, nor in view of well-settled law could it be urged with any confidence that such exercise of the police power of the state impaired the obligation of contracts or took property without due process of law within the meaning of the federal and state Constitutions. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; German Alliance Ins. Co. v. Kansas, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Union Dry Good Co. v. Georgia Public Service Corporation, 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420; Mill Creek Coal & Coke Co. et al. v. Public Service Commission, 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 108; Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721; Bosley v. McLaughlin, 236 U. S. 385, 35 Sup. Ct. 345, 59 L. Ed. 632.

[2] Without denying that the subject of rates involved was a proper subject for regulation by the police power of the state, appellant urges that this contract could not be affected by the action of the Corporation Commission. It must be borne in mind that at the time the contract was made this Commission existed, with the power under the statutes of Oklahoma to fix rates for the furnishing of electric current for light, heat, or power. The principle applicable to this situation is clearly expressed by the Supreme Court of the United States in Walker v. Whitehead, 83 U. S. 314, 317 (21 L. Ed. 357):

"The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it. This embraces alike those which affect its validity, construction, discharge, and enforcement;" and that such is one of the "axioms in our jurisprudence."

In United States v. Dietrich (C. C.) 126 Fed. 671, 675, the court said:

"When this contract between the United States and the defendant was entered into; the statute to which we have referred was then in existence, and became an essential part of the contract, as much so as if it had been copied therein at length."

In Oklahoma Natural Gas Co. v. State et al., 78 Okl. 5, 188 Pac. 338, the Supreme Court of Oklahoma held that orders of the Corporation

Commission prescribing rates to be charged are as much a law of the state as if enacted by the Legislature, and that the public utility in that case was subject to the provisions of the orders of the Corporation Commission the same as if they had been made a part of the contract between the consumer and the general public. See, also, Southern Oil Corporation v. Yale Natural Gas Co., 89 Okl. 121, 214 Pac. 131; City of Durant et al. v. Consumers' Light & Power Co. (Okl. Sup.) 177 Pac. 361; Oklahoma City v. Corporation Commission et al., 80 Okl. 194, 195 Pac. 498; City of Pawhuska v. Pawhuska Oil & Gas Co. et al., 64 Okl. 214, 166 Pac. 1058; Public Utilities Commission of Kansas et al. v. Wichita R. & Light Co. (C. C. A.) 268 Fed. 37.

[3] Further it is sound law that parties by contract cannot take from such Commission the right granted it by a state to fix rates on service furnished by public utilities. If by contract the Commission could be prevented from increasing rates, then likewise by contract it could be prevented from reducing them, and the regulation of the Commission set up and authorized by the Legislature to regulate rates of public utilities would be futile.

Thompson on Corporations (2d Ed.) vol. 3, § 2954, lays down this rule:

"The power of the state to regulate the tolls and charges of corporations which it has created to perform public duties cannot in any way be limited or restricted by the provisions of contracts between corporations subject to such regulation and third persons."

In Knoxville Water Co. v. Knoxville, 189 U. S. 434, 438, 23 Sup. Ct. 531, 532 (47 L. Ed. 887), speaking of a contract for supply of water made between the city and the water company, the court says:

"Such contracts, of course, were made by it subject to whatever power the city possessed to modify rates. The company could not take away that power by making such contracts." Hudson County Water Co. v. McCarter, etc., 209 U. S. 349, 28 Sup. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560; Louisville & Nashville Railroad Company v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; New Orleans v. New Orleans Water Works Company, 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943.

[4] It is claimed by appellant that the situation is different because the contract here is made by the government and not by an individual. In support of this contention some opinions of the Comptroller of the Treasury are cited, which do not seem to us particularly persuasive. Reference is also made to the case of Van Brocklin & Another v. State of Tennessee & Others, 117 U. S. 151, 6 Sup. Ct. 670, 29 L. Ed. 845. We see no relevancy in this case to the point urged, as that case involved an attempt by the state of Tennessee to tax land of the United States which by the Constitution of the United States was exempt from taxation under the authority of a state.

United States v. Fox, 94 U. S. 315, 24 L. Ed. 192, is referred to, and language ascribed to Chief Justice Marshall is set forth in the brief of appellant. The opinion in United States v. Fox was written by Justice Field, and not by Chief Justice Marshall. We see nothing in the case bearing upon the question involved here. The other case cited is

Ex parte Yarbrough, 110 U. S. 651, 657–658, 4 Sup. Ct. 152, 155 (28 L. Ed. 274), in which Mr. Justice Miller is quoted as follows:

"If this government is anything more than a mere aggregation of delegated agents of other states and governments, each of which is superior to the general government, it must have the power to protect the elections on which its existence depends from violence and corruption."

We fail to see the connection between the power of the government to protect elections upon which its existence depends and the question of the government entering into a contract to supply electric current to the Ft. Reno Remount Depot. Here the government was contracting with one of its citizens to do a very common and ordinary thing not in any way relating to or involving its existence, viz., furnish electricity for lighting and motor power at Ft. Reno Remount Depot. We see no reason why as to a contract of this nature the government should occupy any different position than if the same had been made between two of its citizens.

In United States v. Bostwick, 94 U. S. 53, 66 (24 L. Ed. 65), it was said:

"The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf."

In Cooke et al. v. United States, 91 U. S. 389, 398 (23 L. Ed. 237), the court, referring to the government, says:

"If it comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there. Thus, if it becomes the holder of a bill of exchange, it must use the same diligence to charge the drawers and indorsers that is required of individuals; and, if it fails in this, its claim upon the parties is lost."

In United States v. North American Commercial Co. (C. C.) 74 Fed. 145, 151, it is said:

"When the government enters into a contract with an individual or corporation it divests itself of its sovereign character so far as concerns the particular transaction, and takes that of an ordinary citizen; and it has no immunity which permits it to recede from the fulfillment of its obligation."

The question has received a like interpretation by the United States Court of Claims in Southern Pac. Co. v. United States, 28 Ct. Cl. 77, 105; Purcell Envelope Co. v. United States, 47 Ct. Cl. 1, 24.

The trial court was correct in holding that the contract, as to rates, was subject to the decisions made by the Corporation Commission changing the same. The decree denying the injunction prayed for and dismissing the bill of appellant was correct, and the same is affirmed.