Richaedson, Oh.. J.,
delivered the opinion of the court:
The claimant’s testator having been accepted as a contractor upon his bid under an advertisement of the Post-Office Department, entered into a written contract with the defendants for transporting the mails on Route No. 10312, “being the mail-messenger, transfer, and mail-station service in the city of Washington, D. C.”
By the advertisement upon which the contract was founded and therein referred to, the service on the route to be performed was divided into three parts — mail-messenger service, transfer service, mail-station service, as set out in finding I.
By the eighth clause of the contract, the contractor agreed “To carry post-office blanks, mail locks and bags, and all other postal supplies.”
*76 By tbe tenth clause be was “To perform all new or additional mail-messenger, transfer, and mail-station service tbat tbe Postmaster-General may order at the city of Washington, D. 0., during the contract term, without additional compensation.”
By the terms of the advertisement the points between which “the mail-messenger, transfer, and mail-station service” was to be performed were specified.
The carrying of “post-office blanks, mail locks and bags, and all other postal supplies,” which was not covered by those terms, was not limited as to localities of performance, except that by implication it was to be done on Route No. 10312.
Tbe counsel for tbe defendants contends that this latter service was to be performed to any extent between any points in the city of Washington tbat tbe Postmaster-General might order without limit. We can not adopt that view. In Otis Case (19 C. Cls. R., 472) we said: “In seeking to ascertain the intention of the parties to a written contract the whole tenor of the instrument, the object apparently in view as disclosed by the language of its different parts, the surrounding circumstances under which it was entered into” maybe taken into consideration. To this may be added that a contract of this kind is to be construed with reference also to the postal laws and regulations in force at the time and the instructions to bidders under the advertisement for proposals on which the contract was founded, as well as the manner in which like service had previously been performed. .
The instructions to bidders provided:
“2. The contractors under this advertisement will be required to perform, without additional compensation, any and all new or additional service that may be ordered from July 1, 1885, or at any time thereafter during tbe contract term, whether between post-offices or mail stations, and railway stations or steamboat landings, to between railway stations and mail stations, or steamboat landings, or between post-offices and mail stations (including mail stations, railway stations, and steamboat landings) now established or that may hereafter be established.”
The new and additional service contemplated by the tenth clause was explained by the above instructions in the advertisement and was clearly to and from post-offices or mail sta *77 tions, railway stations (or depots), and steamboat landings in tbe city of Washington.
Revised Statutes, section 3871, authorized the establishment of branch post-offices as follows:
‘‘The Postmaster-General, when the public convenience requires it, may establish within any post-office delivery one or more branch offices for the receipt and delivery of mail matter and the sale of stamps and envelopes, and he shall prescribe the rules and regulations for the government thereof. But no letter shall be sent for delivery at any branch office contrary (to the request of the party to whom it is addressed.
Branch offices have come to be called, in departmental language, “mail stations” and to be designated by letters of the alphabet.
At the time of making this contract there was in the city post-office a local repair shop for the repair of damaged mail bags, as there was in each of several other cities in the country, and the only mail bags the contractors had previously been required to carry on this route was to and from the city post-office.
In the autumn of 1888 the Post-Office Department entered upon a new policy of having mail bags from other localities repaired in Washington. For this purpose Congress, by the Act of October 19, 1888, chapter 223 (25 Stat. L., 615), gave the Postmaster-General authority “to rent a suitable building in the city of Washington to be used as a mail-bag repair shop.” Under authority of this act the Postmaster-General rented a distinct building on E street, and established there, at some distance from the city post-office, a general repair shop in the “Rink,” so called, to and from which mail bags were carried by the contractor upon the order of the Postmaster-General.
This was neither a railway station, steamboat landing, nor, in fact, a mail station (nor branch post-office).
It is true that on February 11,1889, the Postmaster-General issued an order that the premises known as the “ Rink,” on E street, having been rented for the mail-bag repair shop, be designated as “ Station I of the Washington (D. 0.) post-office, from February 11,1889, and the postmaster will designate a superintendent of said station from the date named.” But there was no receipt or delivery of mail matter, and no sale of stamps and envelopes at said Rink, and it was never *78 used, in point of fact, as a branch post-office. Merely designating the Rink as a branch post-office (or mail station) without using it for that purpose did not make it such any more than it would have been a railway station or a steamboat landing by being so designated. In either case it still remained a general repair shop as established by the Postmaster-General in accordance with a law of Congress passed after this contract was entered into.
In our opinion this carrying of mail bags to and from the general repair shop at the Rink, greatly enlarged by the change of policy by the Postmaster-General on the subject by authority of Congress, was not such new or additional mail-messenger, transfer, and mail-station service as was contemplated by the tenth clause nor by the parties in entering into the contract, but was extra service, for which the contractor was entitled to be paid a reasonable compensation.
Judgment will be entered for the claimant in the sum of $975.