I)AVIS, J.,
delivered the opinion of the court:
This action arises from a post-office contract for transferring mail within the city limits of New York, as to which plaintiff (the contractor) feels that duty imposed upon him has caused him expense, and this duty he was under no legal obligation *268 to perform. Therefore he asks judgment against defendants for service thought to be extra.
The facts are many, but simple. They present in one case several different causes of action.
This class of contract has been so often examined in the Supreme Court and in this court that it is unnecessary to describe it in detail. The instrument is set out in full in the findings.
The first subject of coutention to consider is the collection of mail from substations.
A “substation”is not to be confounded with a “branch post- . office.” These “ substations” are found in cigar shops, apothecary shops, and other similar places of usual public resort, and only receive mail. They distribute none. In effect they differ not at all from the ordinary lamp-post box — the box is put “indoors” instead of remaining “out of doors;” that is all the difference. The collection from the lamp-post boxes (the street boxes) had always been made by letter carriers, and had not been made by the “ covered regulation mail-messenger service,” which plaintiff contracted to perform. At the time this contract was made “mail stations” were understood to be “branch post-offices.” No other mail stations were then known. This court has said (Knox v. United States, 30 C. Gis. R., 77): “Branch offices have come to be called in departmental language ‘mail stations’ and to be designated by letters of the alphabet.” In fact, “branch post-office” and “mail station” meant the same thing when this contract was made.
Plaintiff contracted to perform “covered regulation wagon mail-messenger service” — that is, a “mail-messenger” service which required “covered regulation wagons;” not one to be performed either on foot or upon street or elevated railroads.
Section 743 of the Postal Eegulations says of “covered reg- ' ulation mail-messenger transfer and mail-station service:”
“This service is required to be performed in regulation wagons, built in accordance with plans and specifications by the Department. It is let for a stated period, after a formal advertisement, and a contract and bond are required.”
Plaintiff’s contract forced him, among other things, “to take the mail from and deliver it into the post-offices, mail stations, and cars at such points and at such hours, under the directions of the postmaster at New York, approved by the Postmaster- *269 General, as will secure dispatches and connections and facilitate distribution, and at the contractor’s expense for tolls and ferriage;” to furnish sufficient wagons “for the service;” to perform “all new or additional or changed covered regulation wagon mail-messenger, transfer, and mail-station service that the Postmaster-General may order,” without additional compensation, “whether caused by change of location of post-office, stations, landings, or the establishment of others than those existing at the date hereof, or rendered necessary, in the judgment of the Postmaster-General) for any cause, and to furnish such advance wagons or extra wagons from time to time for special or advance trips as the Postmaster-General may require, as a part of such new or additional service.”
Other stipulations are found in the contract favorable to defendants and giving to the Postmaster-General broad discretion and much power.
The subject-matter of this contract must be distinctly remembered: It is not for carrier service, or for collection from street boxes, or for delivery in small amounts; but for service of large quantities of the mail which were to undergo some process of sorting or arrangement — some intermediate process — before delivery.
This plaintiff conducted a wholesale business (we may say, for illustration), while the general post-office of New York, through the branch offices and carriers, conducted a retail business. There is no similarity in kind between this plaintiff’s duties and those of a branch post-office, a substation, or a carrier. Woolverton contracted to take the mail in bulk between the shipping points and the places where it was sorted for delivery or where it was received (through the carriers) to be made up for the railroads or steamships. His contract was, in essence, a link in the “ through ” or “ long-distance ” service, and was distinct from the local or city service.
The purpose of the “ substations ” is set forth in the findings. It will be seen that they differed in no respect from the ordinary street letter boxes. It is the duty of the letter carriers to collect from these boxes. The fact that the boxes are inside an inn, an apothecary shop, or a telegraph office, or fastened to a telegraph pole instead of fastened to a lamp-post, does not change their character. Plaintiff was under no obligation, through his contract, to perform this service, and should recover the reasonable value of the service as extra.
*270 In reaching this result we do not consider his conversation with the New York postmaster upon the subject — a conversation which occurred prior to the contract.
Plaintiff under this same contract carried to Jersey City mail intended to be shipped by the Pennsylvania Eailroad, but (at first) did not carry mail intended for the post-office in Jersey City. This Jersey City mail was carried three trips a day by another contractor until November, 1891; this Jersey City route was known as “ mail messenger route No. 209071;” it was a different route from plaintiff’s, contracted for with a different person.
November 23,1891, the Post-Office Department discontinued this route (which was) from the New York post-office to tlie Jersey City post-office and required plaintiff to carry the Jersey City mail across the Hudson Eiver to the Pennsylvania Eailway station in Jersey City, where it was delivered to a post-office agent, to be carried, by wagon to the post-office in that city.
This is not a railway mail and is not a mail properly falling within the service contracted for by plaintiff. The fact that in the performance of one service he visited a point in Jersey City is not a reason for imposing upon him an entirely different kind of service, theretofore performed under a different contract by another contractor. This work we regard as extra to the contract for “ Covered regulation wagon mail messenger, transfer, and mail station service in the city of New York, N. Y.,” and for performing it plaintiff should have reasonable compensation.
VI. The carriage of empty and damaged mail bags was not an incident of the regular postal service. The return of empty bags, made necessary by a preponderance of mail in one direction, is not the service here sued for; but the forwarding to New York in large quantities of empty sacks, damaged and sent on only for repair, and the return of the repaired sacks to the points where they were to be used. This service was extra.
Station O did not substantially differ from other branch post offices. Plaintiff must have carried this mail in any event. If this branch had not been established the mail would have been sent to the general post-office or a substation, whence (under his contract) he must have transported it to the railway *271 stations or the post-office or the wharves. In fact, it seems (in so far as distance is concerned) that he gained by the measure. Instead of carrying New York Central mail down to the central post-office, thence back to the railway station, he carried it direct to the station. So also with the Pennsylvania railway mail. Station O appears to have been an advantage to the contractor.'
The Long Island City mail falls within the same principle as the Jersey City mail, already considered, and the service we hold to be “extra.”
VII. As to the transport of gold: This is clearly not “mail-messenger service,” and plaintiff should recover a reasonable sum for its performance.
A small sum is claimed because of expense caused contractor through a strike on the New York. Central Bailway. This was an event for which neither party was responsible, and under the very broad terms of the contract the loss seems to be one of those which falls upon the contractor.
The construction given to the agreement between the parties is not agreed to in all particulars by all of the members of the court. It is thought by some that the plaintiff should recover more than has been awarded, and by others that he should recover less; but a majority concur in directing that the judgment be rendered for $52,088.33.