Weldon, J.,
delivered the opinion of the court:
In this proceeding the claimant seeks to recover compensation for the performance of certain service rendered by it for the defendants, incident to the execution of a contract made on the 10th day of January, 1889, between it and the defendants, for covered regulation wagon mail-messenger service, transfer, and mail-messenger service in the city of Philadelphia, Pa.
The contract was for the term of four years commencing on the 1st day of July, 1889, and terminating on the 30th of June, 1893.
It, among other matters, provides:
“ Witnesseth, That whereas, Union Transfer Co., Chas. E. Pugh, pres’t, has been accepted as contractor for transporting the mails on route No. 9206, being the covered regulation wagon mail-messenger, transfer, and mail-station service at the city of Philadelphia, Pa., under an advertisement issued by the Postmaster-General on the 15th day of September, 1888, for such service, and which advertisement is herewith referred to and made by such reference a part of this contract, and all new or additional service of said kinds which may at any time during the term of this contract be required in said city, at twenty-nine thousand nine hundred and nine-four and xPo dollars per year, for and during the term beginning the first clay of July, 1889, and ending June 30, 1893.”
The claimant entered upon the performance of the agreement, and continued to perform the service until the end of the term, and for what it conceives to be the service contemplated by the contract no claim is made; but it is alleged that it was compelled, and did perform a large and valuable service in connection with the mails which is not provided for by the terms of the agreement and advertisement, and which in contemplation of the parties was not intended to be performed by the claimant.
It is alleged that at the time of making the contract but four mail stations existed in the city of Philadelphia; that for these mail stations the claimant performed all the service required; but for a considerable period of the contract the claimant was required and did perform a large amount of service beyond the service incident to the mail stations existing; that the defendants changed the system in the collection *224 of the mails and by that change established receiving stations which were not mail stations, and required the claimant to carry mail received at such stations to the central office, and. thence to the depots; that such stations were not branch post-offices and not designated as such and did not come within the contract; that during the contract seventeen stations of that kind were established, from which the claimant was required to carry the mails and to which it was required to carry supplies and mail bags, and for such service the claimant charges, the sum of $24,805.95.
The claimant further alleges, that in pursuance of such change of policy the defendants during the time of the contract established fourteen places called subpost-offices for the receipt of mail matter, to which and from which it was compelled to perform a large amount of service not embraced in the contract, and for which it charges the sum of $44,658.90, making in the aggregate the sum of $69,464.85, and for that sum this suit was brought. The claimant at the time it was ordered to perform the alleged service protested against the right of the defendants to require such service, but proceeded to perform it expecting to demand compensation for such performance.
To the claim thus presented the defendants insist that a large portion of the alleged extra service comes within the contract, and to the part not coming within the contract the claimant is entitled to recover much less than the sum charged.
The legal controversy, so far as the right to recover for the service in item of $44,658.90, arises upon the construction of the contract in what is meant by the terms “and all new or additional service of said kinds which may at any time during-the term of this contract be required in said city.” It is insisted by the defendants that all of the service embraced in said item of $44,658.90 coinés within that clause of the contract and advertisement which provides for “new and additional service.” As to the receiving stations the main contention is as to the basis on which the computation of compensation shall be calculated. It is insisted by the claimant that it is entitled to calculate the distance in the collection of mails from the general post-office to each of the stations and thence back to the post-office, while the defendants contend *225 that the compensation for both services shall be calculated upon th e circuit travel which was made by the wagons of the claimant to and from the genera], post-office in the collection of the mails left at the receiving stations and substations.
The findings show that in about eight months from the time the claimant entered upon the performance of the contract a very important change was made by the defendants in the manner of collecting the mails in the city of Philadelphia; and instead of' having the mail deposited in four branch offices, they from time to time established, during the term of the contract period, seventeen receiving stations, five receiving stations called substations, which were afterwards' made full stations, and eight full stations or branch post-offices, to which and from which the claimant was required to make trips in the collection of the mail and in the distribution of mail supplies.
At the time the contract was made, and for many-years prior thereto, the system of the Post-Office Department was to bring the mail to the branch post-office and the main office by means of letter carriers and special messengers under the free-delivery system, and the “covered regulation wagon mail-messenger service” related to the transportation of mail from the branch offices and the main post-office.
It is shown by the findings that the claimant’s superintendent called at the post-office in Philadelphia, in accordance with instructions to bidders, before submitting the bid of the company, for information in regard to the service and its requirements, and was in substance informed by the superintendent of mails ás to the proportionate increase of the service. No suggestion was made to him by such mail superintendent of any change of system, and no inquiry was made by the superintendent of the claimant as to any change in the system. The information communicated by the superintendent of mails was in substance information founded on the previous service in regard to the proportional increase of service — that he supposed there would be .the usual increase during the term.
The question of the liability of the defendants for service under a somewhat similar contract was presented in the case of Knox Ex. v. United States (30 C. Cls. R., 59), in which it is in substance decided that the Revised Statutes, 3871, which authorizes the establishment of branch post-offices “for the *226 receipt and delivery of mail” does not authorize the Department to designate a shop as a branch post-office which is not used for that purpose. The mere designation of the Postmaster-General does not confer upon the place the legal quality of a branch post-office or mail station, unless the place or point designated is used for the purpose contemplated by the statute.
The statute provides: “The Postmaster-General, when the public convenience requires it, may establish within anj*- post-office delivery one or more branch offices for the receipt and delivery of mail matter and the sale of stamps and envelopes, and shall prescribe the rules and regulations for .the government thereof, but no letter shall be sent for delivery at any branch office contrary to the request of the party to whom it is addressed. ”
In the case of Woolverton (31 C. Cls. R., 247), in which the suit was founded upon a contract for “covered regulation mail-messenger service,” the claimant recovered a judgment for service performed to and from the substations upon the theory that such service did not come within the contract providing for service to and from “branch post-offices” or “mail stations.” Neither of those cases was appealed, and the law rests upon the decision of this court. While the defendants are contesting only the service to and from substations, they do not fully concede the law of the Woolverton case. The court in the Knox and Woolverton cases held that by the language of the Department “mail stations” and “branch post-offices” mean the same thing. In the Woolverton case it is said:
“A ‘substation’ is not to be confounded with a ‘branch posh-office.’ These ‘ substations ’ are found in cigar shops, apothecary shops, and other similar places of usual public resort, and only receive mail. They distribute none. In effect they differ not at all from the ordinary lamp-post box— the box is put ‘ indoors ’ instead of remaining ‘ out of doors; ’ that is all the difference. The collection from the lamp-post boxes (the street boxes) had always been made by letter carriers and had not been made by the ‘ covered regulation mail-messenger service,’ which plaintiff contracted to perform. At the time this contract was made ‘ mail stations ’ were understood to be ‘ branch post-offices.’ No other mail stations were *227 tben known. This court has said (Knox v. United States, 30 C. Cls. R., 77): ‘ Branch offices have come to be called in departmental language “ mail stations ” and to be designated by letters of the alphabet.’ In fact, ‘branch post-office’ and ‘ mail station ’ meant the same thing when this contract was made.
*x* -x- * *x- *
“The purpose of the ‘substations’ is set forth in the findings. It will be seen that they differed in no respect from the ordinary street letter boxes. It is the duty of the letter carriers to collect from these boxes. The fact that- the boxes are inside an inn, an apothecary shop, or a telegraph office, or fastened to a telegraph pole instead of fastened to a lamppost, does not change their character. Plaintiff was under no obligation, through his contract, to perform this service, and should recover the reasonable value of the service as extra.”
Following the line of the Woolverton case as to the receiving stations (as to which there is no substantial contention, except as to the proper basis of compensation), we determine ■as to those stations that the plaintiff has a right to recover.
The increase of the service from a period of about eight. months from the time the contract went into operation was so large and material it would be unjust to claimant to say that such service was contemplated by the parties, and to justify the Department in making an increase of that magnitude the service must be brought clearly within the description of the •service specified in the agreement. New and additional service must be such service as only increases the volume of the •service specified in the contract.
Before and at the time of the making of the agreement the collection and distribution of mail and mail matter, as shown by the findings, was made by letter carriers, and while the Department had the right to establish branch offices, dependent upon the necessities of the service, it had no right to establish a new sj'stem and require the claimant to perform the service of collecting mail and distribution of mail matter as contradistinguished from the service of carrying mail and mail matter as incident to a branch office.
Assuming by the construction of the contract that the service as to the receiving stations does not come within the obligation of the claimant as measured by the agreement, but is *228 extra thereto, it became and was the duty of the claimant to perform the service in the most expeditious manner and economical mode, which would be by the system of circuit travel and not by the mode of going to each receiving station and thence back to the post-office, but to include as many stations in one trip as practicable. Taking that basis -as the proper one on which to compute the compensation, the findings show that the .claimant was compelled in the performance of the service to travel with his wagons the distance of 27,518 miles, and that such service was worth at the rate of 25 cents, per mile, making an aggregate of $6,879.
From the allowance thus made for receiving stations, as set forth in finding ix, we exclude the travel to and from station No. 11, for the reason that mail was delivered from that station and it therefore does not come within the law as applicable to receiving stations. The amount traveled by the claimant in the performance of the service at that station amounted to 6,684 miles.
In finding ix it is shown that from some of the receiving-stations mails were convejmd by foot messengers in the employ of the claimant, and that such service was reasonably worth the sum of $930, and for that amount an allowance is made, and also for services at station 6, which were reasonably worth $544.
In finding x it is shown that for certain substations from which no mail was delivered the claimant carried the mail and delivered postal supplies amounting in the aggregate to 111,854 miles, which was reasonably worth the sum of 25 cents per mile computed on the basis of circuit travel, and for that an allowance is made of $27,963.
In finding x it is shown that services were performed by the claimant to and from certain stations, which were full branch post-offices, aggregating the sum of 33,640 miles — said branch offices being the offices described in finding vm — which mileage being calculated at the rate of 25 cents per mile amounts to the sum of $8,205. For this no allowance is made.
In the Woolverton case (supra) there is one station designated as “O” for which no allowance was made to the claimant, and it is insisted that the substations claimed for in this proceeding come within the classification of “O.” It is stated *229 in the opinion as to “O” that it did not substantially differ from other branch post-offices, and also that in carrying the mails from Station “O,” as the plaintiff did, instead of carrying it from a branch post-office or the general post-office, he was the gainer by the distance being shorter.
It is true that, in the court’s opinion, it is said that Station “0” did not substantially differ from other branch post-offices, but in connection with that statement it is said that Station “O” appears to have been an advantage to the contractor, it being so situated with reference to the New York Central and Pennsylvania depot as that hauling the mail from that station directl3r to those stations was less trouble and labor to the claimant than though such mail matter had been left at branch post-offices proper or the post-office. If the claimant performed in substance the same service which he was required to perform under the contract with less trouble and expense to himself upon a quantum meruit claim, he would not be entitled to recover. If by consent of the other contracting party a party is relieved from a portion of the contract and performs an act not coming directly within the contract at less expense and trouble, he can not charge the other party with additional pay if by such arrangement he was exonerated from an equivalent service under the agreement. The stations in this case, although receiving large quantities of mail and having employed in them several clerks, ho mail was distributed from them, and it does not appear that their establishment and use by the Post-Office Department relieved the claimant from the performance of an equivalent service under the contract. We therefore hold that, as to the substations from which no mail was delivered, the plaintiff has the same right to recover that it has for receiving stations.
Upon the whole case it is determined that the plaintiff is entitled to recover the sum of forty-one thousand eight hundred and one dollars (§41,801).