Booth, J.,
delivered the opinion of the court:-
The contentions involved in this litigation arise out of a postal contract. The claimant entered into an agreement *258 with the Post-Office Department on July. 1, 1897, for the performance of the covered regulation wagon, mail-messenger, transfer, and mail-station postal service in the cities of Baltimore, Md., and Washington, D. C. The contract extended over a period of four years, and by its terms imposed upon the claimant the performance of “ anj'’ and all new or additional service ” of the character above described without additional compensation. The amounts claimed in this case are alleged to be due claimant by reason of the performance of extra services not embraced within the meaning of “ new or additional ” services.
Claimant also seeks a reformation of the tenth .clause of the contract by eliminating therefrom the words “ or rendered necessary, in the judgment of the Postmaster-General, for any cause.” The contention rests upon a variance between the advertisement and the contract, the advertisement being made a part of the contract by the terms thereof. No additional testimony, except the statement of the claimant that he did not read the contract at the time of signature, is offered to sustain the position of a mutual mistake in the wording of the contract. On the other hand, it affirmatively appears that claimant had previously executed two contracts with the Post-Office Department respecting the transportation of the mails, in both of which these identical words appear. It is well settled that the common-law rule whereby all prior understandings ar.e merged in the subsequent written contract can not be strictly applied to contracts of this character, because they are .required to be made by advertisements, bids, and acceptances. These three steps constitute the real contract, and the written instrument is merely a reduction to form of the intention of the parties, as expressed in the prior advertisement, bid, and acceptance. (Garfielde v. The United States, 93 U. S., 242; Mueller v. The United States, 19 C. Cls. R., 581; Harvey v. The United States, 105 U. S., 671.)
In this last case it was said: “If the formal contract is susceptible of a different construction, to the prejudice of the contractors, it is very plain that not only' the contractors but the officers of the Government were under a mistake.” While the doctrine thus announced is directly contrary to the *259 rule at common law, both as respects mutual mistakes and quantum of proof required to sustain reformation of a written instrument, this case comes squarely Ayithin the decisions and reformation if deemed.essential to claimant’s rights in this case would be granted. The contract if reformed does not, however, limit the power or authority of the Postmaster-General to require “ any and all new or additional service within said cities ” to the full extent and meaning of the parties as gathered from the written instruments.
The issue raised is, in fact, an immaterial one. Defendants are not seeking to extend the meaning of the contract by the employment of the comprehensive terms sought to be eliminated therefrom. To so undertake would be unconscionable. The transaction in the light of all the circumstances surrounding it was a 'proposal and acceptance to perform a designated mail service, a service having its own identity, distinct from other mail service, and paid for out of separate appropriations.
Contracts similar in many respects to the one in suit have been the subject of litigation many times in this court. The rule governing their construction is well settled. As was said in Utah, Nevada and California Stage Company v. The United States (39 C. Cls. R., 435) : “ It must, therefore, be regarded as a settled rule of decision of this court that the ‘ new or additional mail messenger or transfer service ’ which is to be performed ‘ without additional compensation ’ is one thing and that service which is different in kind and character is another, and that for the former the contractor can not recover, but for the latter he may.”
The first claim for extra services under the Baltimore contract arises from an alleged change of system of collecting the mails and delivering them into the general post-office. At the time of the advertisement there were two street car routes in operation in Baltimore, and the claimant was advised that he would be required to meet these cars at certain specified points and take from and deliver to them mails from the general post-office. This was admittedly service within the contract, and the mail thus transported was gathered from branch post-offices located upon the street car lines. Subsequent to the advertisement and execution of the con *260 tract, the' collection of mail from street letter boxes and substations by letter carriers and mail collectors theretofore in vogue was discontinued and this entire volume of mail was collected by means of postal-car collection boxes installed at various points along the line of the street railways, from which postal collectors attached to postal cars collected the same, and the street cars delivered it to the claimant at various street intersections where he was required to meet them and transport the mail to the general post-office. (Finding IX.) It is to be observed, however, that the additional service thus imposed upon the claimant was not different in kind and character from that embraced in the contract. The service differs in every respect from that heretofore declared extra by the court, in that the claimant was not required to visit the collection boxes and carry the mails directly therefrom to the general post-office. He was, it is true, required to make many additional trips to and from the street cars and carry a much greater volume of mail to the general post-office, but the service was clearly within the requirements of the covered regulation wagon mail-messenger transfer and mail station postal service as contemplated bjr the contract. This case differs from the Union Transfer Company's Case v. The United States (36 C. Cls. R., 216), wherein the contractor was required to perform extra service by carrying the mails to and from the central post-office and numerous receiving stations established subsequent to the contract at various points throughout the city. In the present case the contractor understood before and at the time of the execution of the contract that the service he was to perform embraced the carriage of the mails to and from the street railway stations, and to which he made no protest or objection. If the change in system simply added to, although it materially increased his service in this respect, it can not be said to be extra, but is new and additional service of the same kind. Claimant obligated himself • to transport the mails from the mail stations to the general post-office, to and from the general post-office and railway stations, steamboat landings, etc., “ whatever may be its size, weight, or increase during the term of this contract.” The language in both the advertisement and the contract being anticipatory in charac *261 ter necessarily warned the contractor that he was engaging to perform a service susceptible to fluctuation at any time.
There can be no allowance for the second claim for extra services under the Baltimore contract for reasons stated above, and for the additional reason that claimant was notified by the advertisement that such service was to be established and he would be required under the contract to perform it. The additional service he was required to perform was the carriage of the mails from street car stations to and. from the general post-office, inaugurated subsequent to the execution of his. contract, being the establishment of street railway postal service upon street railway lines in the city of Baltimore which had not theretofore carried the mails. (Finding X.) Luther M. Slavens v. The United States (88 C. Cls. R., 574), affirmed by the Supreme Court, but not yet reported.
Becovery for extra service under the Washington contract is rested solely upon the case of the Utah, Nevada and California Stage Company v. The United States (supra), claimant asserting that for no apparent reason the service in vogue at the time of the contract was duplicated subsequent to its execution. (Findings XY to XX.) The case relied upon is not similar in every respect to this. The court therein did award judgment for the duplication of an existing service. The case turned, however, not solely upon the duplication of service, but upon the magnitude of the additional service required of the contractor. The court said:
“The very magnitude of the service exacted by the Post-Office Department changed the service in kind and character. In form it was ‘ new and additionalin substance it was rendered for a new and different system of postal administration in the city of New York, of such magnitude that it could not have been anticipated or foreseen by the most prudent and experienced business man who proposed to bid for the service or enter into the contract.”
The additional and extra service there required was increased 50 per cent by the establishment of a second city post-office quite a distance away and entirely separate and distinct from the general post-office. The findings in this case do not disclose an abnormal increase of claimant’s *262 services; on the contrary, by the establishment of the new street railway route claimant was relieved from services to other routes, until on the Avhole the mileage traversed by him Avas decreased instead of increased. He Avas required to make additional trips to and from the street railway stations; but his services were of the same kind and character and came within the regulation wagon, mail messenger, transfer, and mail station postal service, as provided in the contract. (Luther Clay Slavens v. The United States, supra.)
It appears that during the holidays claimant Avas required by the Postmaster-General to perform, and did perform, certain service betiyeen the various substations and the'main post-office, in Washington. For this service claimant is entitled to recover. (William II. Woolverton v. The United States, 34 C. Cls. R., 247.) The reasonable value of the same is $219.25, for Avhich amount judgment will be awarded.